WALTER B. ALLEN, survivor of Elijah B. and Walter B.
Allen, Respondent, *v.* THE MERCANTILE MUTUAL INSURANCE
COMPANY, Appellant.

Under a contract for the insurance of freight, the voluntary surrender of
the goods to their owner, free of freight, under any circumstances short
of a technical total loss, or inability to deliver them in specie at the port
of destination, is not a loss of freight within the conditions of the policy.

So long as the vessel is capable of completing the voyage and thus earning
the freight, neither the question of profit and loss to the owner, nor of
the length of time required to deliver the cargo, can so excuse the sur-
render without payment of freight as to render the insurers liable as for
a loss.

Neither an injury to the vessel, not sufficient to create a total loss, but
reparable within a reasonable time, nor the act of God, in closing navi-
gation by ice, will authorize the abandonment of the voyage; but either
will authorize a detention of the goods until the voyage can be completed.
Nor does the fact that the delay by the injury results in the further delay
by close of navigation, present any more sufficient excuse for the aban-
donment.

If the owner demands the goods at the port of detention, the master should
make payment of full freight a condition to the delivery. Having sur-
rendered them without payment, he cannot hold the insurer liable.

(Argued January 12th; decided May 1st, 1871.)

APPEAL from an order of the Supreme Court, at General
Term, in the fourth district, affirming a judgment at circuit
in favor of the plaintiffs upon a trial by the judge without a
jury.

The action is to recover on a marine insurance of freight
money.

The complaint states that the defendant issued to the plain-
tiffs, on the 25th day of November, 1863, a certificate of
insurance, thereby insuring them, according to the conditions
of a certain open policy issued by the defendant, $1,200 on
freight money, on inboard cargo of brig Rio Grande, at and
from Cleveland to Ogdensburg. That the brig sailed, with
a full cargo of flour and wheat, from Cleveland, on the 24th
day of November, 1863, to be delivered at Ogdensburg, for

which transportation the plaintiffs were to receive $1,200, as freight, from the owners. That the brig encountered a gale, and, without any fault on the part of the master, etc., was stranded on the rocks at the entrance of the Welland canal, on the 25th November, 1863, whereby the brig was prevented from continuing her voyage and earning her freight. That the plaintiffs complied with the stipulations of the policy, but the defendant has refused payment.

The defendant, by its answer, put in issue the sailing of the brig, the receipt of cargo, amount of freight, the stranding, the want of ability to earn her freight, etc., and the damage. For affirmative defences, the defendant alleges.

1st. That the brig could have been repaired in a reasonable time, and have earned her freight.

2d. That the plaintiff could have sent the cargo forward by another vessel to its destination within a reasonable time and earned full freight at a cost less than the sum insured.

There was no issue in respect to the making, delivery or terms of the insurance certificate and policy as stated in the complaint.

The judge before whom the action was tried, in St. Lawrence county, found that the defendants issued to the plaintiffs an insurance certificate of the tenor and effect stated in the complaint, and that it was duly endorsed on the open policy mentioned; that the brig sailed on the 24th November, 1863, from Cleveland, with a cargo of freight at $1,200, for Ogdensburg, and stranded the next day at Port Colborne, at the mouth of the Welland canal, without any fault of the owner, master or crew; that her cargo consisted of 1,580 barrels of flour, at a freight of fifty cents per barrel, and 5,000 bushels of wheat, at a freight of nine cents per bushel. In consequence of the stranding, the brig sprung a leak, and 1,500 bushels of wheat were lost overboard, 1,026 bushels were wet and very much swollen, and the balance, 2,474 bushels, uninjured; and all the flour was wet and damaged. The flour and the wheat not lost overboard were taken to Buffalo, part on lighters and part on the brig, to which place she was

taken as soon as she would float.   The rest of the cargo was there removed from the vessel and she put on the dry dock for repairs.   She was badly injured, and not ready to resume her voyage until the 15th of December.   The Welland canal was then closed with ice, and no vessel could pass into Lake Ontario.   The brig was unfit to continue her voyage until the repairs were made.   That no vessel could be procured at Port Colborne, while the brig lay there, to take the part of the cargo saved to Ogdensburg, and a vessel from any other port would have cost double the freight to be paid to the brig, and it would have been unsafe for any vessel to take on board the damaged wheat, and it would have been equally expensive to have sent the cargo by rail from Buffalo.   The cargo was insured by the owners and abandoned to the underwriters without objection by the owners of the brig or her master. The flour and 1,026 bushels of wheat in a damaged condition and the dry wheat might have been taken from Buffalo to Ogdensburg by rail, at the advanced rate above stated, but could not by water until navigation opened in the following spring, a period of about five months.   The flour and damaged wheat would then have been worthless, and the damaged wheat, if taken to Ogdensburg by rail, would not then have sold for enough to pay its freight.   And, as a conclusion of law, the judge found, that the brig, being unable to perform her voyage and earn her freight that season, by reason of the said accident, the plaintiffs were entitled to recover the insurance money and interest, amounting to $1,333, for which sum with costs, judgment was entered against the defendant.

At the trial the plaintiffs produced and gave in evidence the insurance certificate issued to them by the defendant, which read that it insured " $1,200 on freight money, *on flour*, inboard cargo," etc.

The defendant produced and read in evidence the open policy referred to in the certificate delivered to the plaintiffs, to the conditions of which the insurance was subject.   The policy contained the following provision viz.:

" The grounding of the vessel or mere detention in any

case is not cause for abandonment, and in case of detention on the voyage by the closing of navigation the risk shall continue; but an additional premium shall be paid for the winter risk, according to the degree of exposure, not exceeding the customary rate for such winter risk."

The defendant excepted to the finding of the contract of insurance, as stated in the complaint; to the finding that the flour and damaged wheat, if retained till the opening of navigation, in the spring, would have been worthless, and to the conclusion that, by reason of the accident, the brig being unable to peform her voyage and earn her freight that season, the plaintiffs were entitled to recover the insurance money and interest.

The defendant appealed from the judgment rendered against them to the General Term, where it was affirmed. The defendant then appealed to the Court of Appeals.

The case below is reported, 46 Barb., 642.

*Isaac Lawson*, for the appellant, on the question of loss of the freight, cited *Palmer* v. *Lorillard* (16 John., 347); *Hadley* v. *Clark* (8 Term R., 259); *Parsons* v. *Hardy* (14 Wend., 215); *Boreman* v. *Teall* (23 Wend., 309); *Wilbert* v. *N. Y. and Erie R. R.* (12 N. Y., 245); *Howard* v. *Astor Ins. Co.* (5 Bosw., 50); *Griswold* v. *N. Y. Ins. Co.* (1 John., 204); 3 id., 321; *Clark* v. *Mass. F, and M. Ins. Co.* (2 Pick., 104); *Saltus* v. *Ocean Ins. Co.* (14 John., 138); *Ogden* v. *Gen. Mut. Ins. Co.* (2 Duer, 218); *Smyth* v. *Wright* (15 Barb., 51); *Hugg* v. *Augusta Ins. and Bank. Co.* (7 How. U. S., 595, 609); Pars. on Mar. Ins., vol. 2, pp. 160–167; *Jordan* v. *Warren Ins. Co.* (1 Story, cited 2 Duer, 220); *De Peyster* v. *Sun Mut. Ins. Co.* (17 Barb., 306).

*Louis Hasbrouck* and *Wm. C. Brown*, for the respondents.

LEONARD, C. The contract of the defendant is, in effect, that the brig shall be capable of performing the voyage so as to earn her freight money, notwithstanding the perils insured

against. Whether the voyage is protracted, profitable or losing, is the concern of the owners, and not of the insurers. The owners must repair any injury to the vessel sustained on the voyage, except it be so great as to amount to a technical total loss.

They may detain the cargo a reasonable time, until such repairs are completed, and then continue the voyage and earn the freight money. Cases of detention for this purpose for six weeks, and even for over two months, have been held not unreasonable, indeed, to be necessary, if the owner will avail himself of his insurance on freight. The owner of the vessel cannot, of his own will, terminate a voyage upon the occurrence of an injury, and resort to the insurers for his freight money. His right to look to them accrues only on his inability to earn his freight by reason of the perils insured against. All the diligence and vigilance of the master and crew due to the shipper, are also due to the insurers of freight money. The owners or master cannot voluntarily surrender or abandon the cargo to the shipper, or to the underwriter, free of freight, if the vessel can be repaired in a reasonable time. (*Griswold* v. *New York Ins. Co.*, 3 J. R., 322; *Herbert* v. *Hallett*, 3 J. Cas., 93; *Saltus* v. *The Ocean Ins. Co.*, 12 J. R., 107; *Saltus* v. *same Co.*, 14 J. R., 144; *Ogden* v. *The General M. Ins. Co.*, 2 Duer., 204; *Jordan* v. *Warren Ins. Co.*, 1 Story C. C. R.) The authorities of the United States and Massachusetts Courts are to the same effect. The obligation of the owner or master to the insurers is to exercise every reasonable means of delivering the cargo and earning the freight money. It is said by the court, in *Saltus* v. *Ocean Ins. Co.* (14 J. R., 144), " that the fidelity and vigilance of the captain in the course of the voyage, without regard to the diminution in value of the cargo, where the articles specifically remain, is the correct test as to the claim of freight on a policy like the present."

The insurance in that case was on freight of rye flour and Indian corn. The vessel had sustained damage by the perils of the sea, and made a port in distress, where she was

unladed and repaired in about two months.  The cargo had become putrid and was not in a condition to bear transportation ; the whole of it was sold.  The vessel was fully repaired and in a state to proceed to sea and prosecute the voyage.  It was held that the insured could not recover for a loss of the freight, as the subject, although damaged, remained *in specie.*  To the same effect is the case of *Griswold* v. *New York Ins. Co.* (3 J. R., 322.)

The brig Rio Grande was repaired, and was in a condition, we must assume, to prosecute her voyage and carry her cargo to Ogdensburg, and thereby earn her freight money, within three weeks after the disaster.  This was within a reasonable time, and there can be no question that the master of the brig was entitled to detain the cargo, so far as the circumstances of the injury are concerned, for the purpose of completing the delivery under the bill of lading.  Before the brig was repaired and ready to take in her cargo and proceed on her voyage, a new cause of detention had supervened.  The Welland canal had become ice bound, and navigation for the season was closed.  The cargo could not be carried forward during the ensuing five months for that reason.

The question then arises, whether the surrender of the flour and wheat to the shippers or underwriters was voluntary, on the part of the master or owners of the brig, or whether the shippers or underwriters were authorized to claim the cargo saved, free of freight.  If they were authorized so to claim it, then the freight money, it must be conceded, was lost, within the perils insured against.

We have not been referred to any authority which holds that the shipper may take his property without the payment of freight, in such a case, and a careful examination shows that he cannot lawfully so take it, against the consent of the master or owner, where the vessel is repaired and ready to proceed in a reasonable time, unless the master or owner is unable or refuses to transport it.

The case of *The Atlantic Ins. Co.* v. *Bird* (2 Bosworth R., 196), cited on behalf of the plaintiff, has no application.   In

that case the vessel was a total wreck, and it was there said, in substance, that the owner was entitled to take his goods, free of freight, at the place of disaster, when there is no ability and no offer to transport them to the place of destination. The wreck and total loss of the vessel, without the ability or any offer to send forward the cargo, gave the right to take it free of freight. The case of the Rio Grande is entirely different. She was repaired and had-the ability to transport the goods at once, but was prevented by the close of navigation. No objection was made by the owners or master to the abandonment of the wheat and flour by the shippers to the underwriters. That is, the cargo was surrendered by the owners or master voluntarily, free of freight. It appears to have been assumed that the close of navigation and the expense of transporting the flour and wheat saved, together with its damaged condition, authorized the course adopted, and that a liability for the payment of the freight was also thereby cast upon the insurers. Had the injury to the brig resulted in a technical total loss, the expense attending the forwarding of the flour and wheat would have justified the surrender, free of freight, and a claim against the insurers for a total loss of the freight-money. Such was the principle applied in the case of *The American Ins. Co.* v. *Center* (4 Wend., 46).

Detention by the close of navigation, which is the act of God, or *vis major*, not accompanied by any accident or injury to the vessel, does not have the effect to terminate or dissolve a contract of affreightment. The owner or master of the vessel is not absolved from his liability to the shipper, nor can the latter demand his goods, free of freight, on account of the detention. (*Palmer* v. *Lorillard*, 16 Johns., 347; *Parsons* v *Hardy*, 14 Wend., 215.)

I am unable to perceive that the stranding prior to the close of navigation alters the relations of the contracting parties, although, if the accident had not occurred, it is probable the brig would have safely delivered her cargo at Ogdensburg before the occurrence of the latter cause of detention. Both

the stranding and the closing of navigation were occurrences without any fault on the part of the owners, master or crew of the brig. Both events were dangers of the navigation, within the exceptions of the bill of lading, and excused the delay, which would necessarily ensue, in making delivery of the cargo at the port of destination. A detention by the occurring of two events, of the character known as dangers or perils of navigation, creates no more sufficient excuse for the voluntary surrender of cargo to the shipper, free of freight, or the cancellation of the bill of lading, than the happening of one such event. An accumulation of disasters or detentions may occur, without rendering the vessel incapable of earning her freight. It would be less profitable, if the vessel encountered repeated disasters or detentions; but the profit or loss, or the length of time required to deliver the cargo, are not conditions of the insurance.

In the present case, the voluntary surrender of the wheat and flour saved, free of freight, is fatal to the right to recover the insurance. The master and owners neglected to insist upon their rights, and therein failed in their duty to the underwriters on the freight money. When the shipper demanded the flour and wheat at Buffalo, it was the duty of the master or owner to have insisted upon retaining them, and upon the right to make delivery thereof at the port of destination, or to have offered to make such delivery, and, if the shipper then insisted upon receiving the cargo at Buffalo, to have demanded the payment of full freight on the portion saved, as a condition of its delivery there. The vessel was able to deliver the cargo saved at Ogdensburg, *in specie,* and thereby perform the voyage and earn her freight money, according to the conditions of the policy.

These considerations render it unnecessary to examine in detail the other questions urged by the defendant's counsel. The opinion of the Supreme Court at General Term appears to be entirely correct on all other questions.

It is unnecessary to consider here the question of the right to recover the freight money on the wheat pumped overboard

or lost in the efforts to raise the brig. That subject was not agitated at the trial, and remains undisposed of by this court.

The judgment must be reversed, and a new trial ordered, with costs to abide the event.

LOTT, Ch. C., not voting.

Judgment reversed, and new trial granted; costs to abide the event.