Henry W. Hubbell, Respondent, v. The Great Western Insurance Company, Appellant.

While the total loss of a vessel short of her port of destination involves a constructive total loss of freight, justifying the owner in abandoning to his insurers on freight, and thereupon claiming as for a total loss, yet, without abandonment, he can recover the whole sum insured only when there is an absolute or actual total loss.

An actual total loss arises only where the circumstances are such as to render the ultimate earning of freight absolutely impossible, or practically hopeless. The mere loss of the vessel does not produce this result, as the master may still earn the freight by forwarding the cargo by other means of conveyance; and it is his duty to the insurer on freight so to do if in his power. If the owner neglect to do this, the insurer on freight is chargeable only in the same way and to the same extent as if the duty had been performed, and the loss will be partial or total according to the amount so adjusted.

The question, therefore, whether the loss of freight is total, does not depend upon whether the ship is totally lost, but upon whether there is a chance of being able to earn the freight by forwarding the cargo.

Where by the perils of the sea the cargo of a vessel is placed in a situation of danger, extra expenses necessarily incurred for saving or taking care of it are not chargeable against the shipowner or the freight, but against the cargo; and although such expenses, added to the cost of completing the transportation, exceed the amount of freight for the whole voyage, they do not prevent the earning of freight, provided the selling price of the goods at the port of destination would be sufficient to cover all the expenses.

If the owners of the cargo, or their insurers, in case of a loss of the ship, are willing to take charge of the goods at the place of the wreck, the master may still earn his freight by offering to carry on the goods. If they insist on taking them, they must pay full freight; and if, after such an offer, the goods are by mutual consent delivered up to the owners or abandonees of cargo, freight *pro rata* is earned.

The master or shipowner is not justified in such case in giving up the cargo without taking measures to secure freight, and then claiming indemnity from his insurers, unless by due abandonment he enables them to protect themselves.

Inchoate or partly earned freight is the subject of salvage.

Where a vessel, having reached the coast, is stranded, and persons without previous request, claiming to act as salvors, save the cargo and deliver it at the port of destination, the shipowner can ratify and adopt their acts, and thus entitle himself to the benefit of them; and, as between himself and the insurer on freight, he is bound to interpose his claim and adopt such course as to secure the freight and procure a proper

adjustment of salvage. If he fails in this, and the freight is thereby lost, the loss will not fall on the insurer.

Where the owner of the ship is also owner of the cargo, by insuring the freight separately he assumes the same relations to his insurers as though he had no interest in the cargo, and is bound to pursue the same course for the purpose of saving freight.

In case of an accepted abandonment of the ship to its insurers before completion of its voyage, if the cargo is carried to its destination in the ship, the freight must be apportioned *pro rata itineris*, and the part earned before the disaster belongs to the shipowner or the insurer on freight, and only that subsequently earned, to the abandonees of the ship. If the transportation is completed by a substituted vessel, the original vessel being wholly disabled, its owners are entitled to the freight; the abandonees of the ship have no right to any portion thereof. The difference in these respects between the rule in this State and that in England stated.

In an action upon a policy of marine insurance upon freight, it appeared that the ship went ashore and was a total loss. About two-thirds of the cargo was taken out, transhipped and safely delivered at the port of destination, where it was sold, and the proceeds received by the insurers on cargo, to whom an abandonment had been duly made. The court charged in substance, among other things, that if the jury found that there was no formal abandonment of the freight, but also that no part of the cargo reached the plaintiff at the port of destination in specie, that there was a total loss of the freight. *Held*, error; that if a part of the cargo saved reached the insurers thereof, to whom the owner had abandoned it, this, so far as the earning of freight was concerned, was equivalent to its reaching the owner, as, by the abandonment, the insurers were put in the place of the owner; that the owner of the cargo could not by abandoning to his insurers disable the shipowner from earning freight, and if the latter, by voluntarily surrendering the cargo to the abandonees without payment of freight, where freight was due or might have been saved, lost such freight, he could not resort to the insurers on freight.

The ship at the time it went on shore had nearly accomplished her voyage from Calcutta to New York. The hope of getting her off was not given up until about seven weeks thereafter, during which time she remained aground, entire, with ample opportunity to take out and tranship her cargo. The owner, who was also owner of cargo, made no efforts so to do, but on condemnation of the ship permitted the Coast Wrecking Company, without objection or claim for freight, to take possession of the cargo, tranship and deliver it at New York to the insurers on cargo, subject to a claim for salvage, which was adjusted at $18,743.50. The net proceeds of sale were $46,858.95. The freight, at the rate insured, on the portion of the cargo delivered was $16,019. There was no proof that the owner was unable to tranship the cargo, or that he offered so to do, or that the amount paid the wrecking company was a reasonable claim. *Held*, that, in the absence of proof of abandonment of freight to defend-

ant, the evidence did not, as matter of law, establish a total loss of freight.

By a clause in the policy it was provided that no claim for a total loss should be made unless in case of loss of more than fifty per cent of the freight on board, and also the actual or technical total loss of the vessel. *Held,* that, this clause simply declared what should constitute a constructive total loss, and did not authorize a claim for a total loss without abandonment, where there was not an absolute total loss.

*Hubbell* v. *Great Western Insurance Co.* (10 Hun, 167), reversed.

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Joseph H. Choate,* for appellant.    Until an abandonment was proved plaintiff could only recover for a partial loss of freight unless the court found that freight was not earned and did not accrue upon the portion of the cargo landed. (2 Arn. on Insurance [2d Am. ed.], *1052.)    The question whether freight is lost or earned cannot be affected by the circumstance that the insured being owner of the ship and goods, was insured by other policies on those interests, or that he abandoned ship and cargo to the underwriters thereon.    (*Smyth* v. *Wright,* 15 Barb., 51; *Buffalo City Bank* v. *N. W. Ins. Co.,* 30 N. Y., 253–254.)    As between the insured and insurer on freight, it was earned on the 915 tons saved by the Coast Wrecking Company.    (3 Kent's Com. [8th ed.], 289; *Hugg* v. *Aug. Bkg. and Ins. Co.,* 7 How. [U. S.], 579; *Huth* v. *N. Y. Mut. Ins. Co.,* 8 Bosw. 538; *At. Mut. Ins. Co.* v. *Bird,* 2 id., 196.)    As between insured and insurers on freight, the insured, or the master as representing him, is bound, in case of disaster, to forward the goods to the port of destination, so as to earn the freight if possible, and if he fails to do so from neglect, the freight is lost within the meaning of the policy.    (*Bradhurst* v. *Col. Ins. Co.,* 9 J. R. 17; *Griswold* v. *N. Y. Ins. Co.,* 3 id., 321; *Hugg* v. *Aug. Ins. Co.,* 7 How. [U. S.], 595; *Saltus* v.

*Ocean Ins. Co.*, 14 J. R., 138; *Palmer* v. *Lorillard*, 16 id., 348; *Howard* v. *Astor Mut. Ins. Co.*, 5 Bosw., 38; *Ogden* v. *Astor Mut. Ins. Co.*, 2 Duer, 204; *Allen* v. *Merc. Mut. Ins. Co.*, 44 N. Y., 437; *At. Ins. Co.* v. *Bird*, 2 Bosw., 196; *Lord* v. *Nep. Ins. Co.*, 10 Gray, 109; *Scottish Ins. Co.* v. *Turner*,1 MacQ. App. Cas., 334.)

*Henry J. Scudder*, for respondent. Plaintiff could treat the loss of cargo as partial or total and it did not affect his demand for total loss of freight. (Parsons' Marine Ins., 1, 166; *Thompson* v. *Rowcroft*, 4 East, 34; *Davy* v. *Hallet*, 3 Cai., 16; *Livingston* v. *Col. Ins. Co.*, 3 J. R., 54, 55.) An abandonment was proper. (*Snow* v. *Un. Mut. Ins. Co.*, 119 Mass., 592.) The acceptance by the underwriters of the abandonment of the ship and cargo transferred the title to both interests to them. (*Buff. City Bk.* v. *N. W. Ins. Co.*, 30 N. Y., 251; *Clamageran* v. *Banks*, 18 Martin, 551; *United Ins. Co.* v. *Lennox*, 1 J. Cas., 377; *United Ins. Co.* v. *Scott*, id., 106; 3 Kent's Com., 321, 331.) Plaintiff was entitled to make an abandonment of the freight. (Abb. on Shipping [7th Am. ed.], 526; *Osgood* v. *Gunning*, 2 Cam., 466; Flanders on Mar. Law, 170; *Ship Nathaniel Hooper*, 3 Sumn., 544, *Buffalo City Bank* v. *N. W. Ins. Co.*, 30 N. Y., 251; *Case* v. *Balt. Ins. Co.*, 7 Cranch, 358; *Daniels* v. *At. Mut. Ins. Co.*, 24 N. Y., 452.) Even without a formal abandonment plaintiff could have claimed and recovered under the policy as for a total loss. (2 Arn. Mar. Ins. [ed. 1848], 1136.) The loss of freight was total. (*At. Mut. Ins. Co.* v. *Bird*, 2 Bos., 197; *Whitney* v. *Firemen's Ins. Co.*, 18 J. R., 210; *Wallerstein* v. *Col. Ins. Co.*, 44 N. Y., 208; *Allen* v. *Merc. Ins. Co.*, id., 437; *De Cuadra* v. *Swann*, 16 C. B. [N. S.] ; *Hewing* v. *Wash. Ins. Co.*, 10 Gray, 440, 460; *Lemont* v. *Lord*, 52 Me. 365.)

Rapallo, J. This is an action on a policy of insurance upon the freight of the ship Tartar on a voyage from Calcutta to New York. The insured value of the freight was

$25,000.    The ship went ashore on Deal Beach about fifty miles from her port of destination and proved a total loss. About two-thirds of her cargo were taken out of her while she lay on the beach, by the Coast Wrecking Company, and transhipped on steamboats and safely delivered at the port of destination, where they they were sold and the proceeds received by the insurers on cargo, to whom an abandonment had been duly made. The question involved in this action is whether the insurers on freight are liable for a total or only a partial loss of freight.

The case is apparently complicated by the fact that the ship, cargo, and freight all belonged to the same party ; but each of these subjects was separately insured, and it is conceded on both sides that the case is to be treated as if the vessel and the cargo were owned by different persons. It will therefore be so treated, and the rights and duties of the plaintiff as shipowner considered, unaffected by the circumstance of his being also owner of the cargo. and *vice versa.*

An abandonment of the ship and cargo to the respective underwriters was proved to have been made and accepted, and a like abandonment of the freight to the defendant was sought to be established on the trial, but as to this fact the evidence was conflicting and the question was submitted to the jury, with the instruction that if they found such abandonment and that it was justified by the existing facts, the plaintiff was entitled to recover as for a total loss, notwithstanding the saving of a portion of the cargo. But the judge further charged, at the request of the plaintiff's counsel, that if the jury should find that there was no formal abandonment of the freight, but also found that no part of the cargo reached the plaintiff at the port of destination in specie, they might still find for the plaintiff, for there was then a total loss of the freight.

The correctness of the first branch of the charge is not disputed ; that of the second is. It impliedly concedes that if any part of the cargo saved reached its owner at the port of destination the loss of freight was not total ; yet

it was an uncontroverted fact in the case that it did reach the insurance companies to whom the owner had abandoned it. This was clearly equivalent to its reaching the owner, so far as the earning of freight is concerned. By the abandonment of a cargo to insurers, the owner puts them in his place and they become the only parties entitled to receive the goods. A delivery to them is as valid for the purpose of earning freight, as a delivery to the owner would have been had there been no abandonment. The owner of the cargo cannot, by abandoning to his insurers, disable the shipowner from earning his freight. The distinction therefore between the cargo reaching the owner, and its reaching his abandonees is not tenable. (*Smyth* v. *Wright*, 15 Barb., 51.) The only effect produced by the shipowner voluntarily surrendering the cargo to the abandonees without payment of freight, where freight was due or he might have earned it, would be that, if he took no measures to protect it, he might lose his lien; but if he lost his freight by that means it is very certain that he could not resort to the insurers on freight. (44 N. Y., 437.)

This portion of the charge cannot be sustained. The counsel for the plaintiff however contends that the fact of abandonment of the freight is established by the verdict and that the recovery can be supported on that ground. This position is also untenable. The evidence as to the abandonment of the freight was conflicting, and the jury may have found for the defendant on that question, and still rendered a verdict for the plaintiff, under the charge, on the ground that there was an actual total loss of freight which entitled the plaintiff to recover without abandonment. The charge on the subject of total loss having submitted that question on an erroneous principle, it is impossible to sustain the judgment unless it appears that a total loss which entitled the plaintiff to recover the entire amount insured, without abandonment, was so clearly established that the plaintiff was entitled to have a verdict in his favor directed by the court on that ground. (*Baldwin* v. *Burrows*, 47 N. Y., 199.)

The counsel for the plaintiff claims that such a total loss was established, and contends that the total loss of the vessel short of her port of destination necessarily involved a total loss of the freight. In this he is right to the extent that it involved a constructive total loss of freight, which would have justified the owner in abandoning to his insurers and by that means claiming as for a total loss. But it is only where there is an absolute or actual total loss, that the insured can recover without abandonment, the whole sum insured. An actual total loss of freight arises only where the circumstances are such as to render the ultimate earning of freight absolutely impossible or practically hopeless, as where the cargo itself is lost, or there are no means of forwarding it, in case of the loss of the vessel, or similar decisive circumstances. (2 Arnould on Ins. [4th ed.], 908.) The mere loss of the vessel short of her destination does not produce that result, for the master or shipowner may still earn his freight by forwarding the cargo to its destination by other means of conveyance ; and it is his duty to the insurer on freight to do so. (3 Kent Com., 210, 213; *Shipton* v. *Thornton*, 9 Ad. & El., 314, 334, 335; *Kidston* v. *Empire Ins. Co.*, L. R., 2 C. P., 357; *Hugg* v. *Augusta Banking and Ins. Co.*, 7 How. [U. S.], 595.) The question whether, in case of accident to the ship, the loss of freight is total, does not depend upon whether the ship is totally lost, but upon whether there is a chance of being able to earn the freight by forwarding the cargo. (2 Arn. on Ins. [4th ed.], 909.) Where the ship is disabled and the circumstances are such as to render the total loss of freight, though not inevitable, yet highly imminent, or more than one-half the freight must necessarily be lost, or there is an actual or constructive total loss of the vessel, the shipowner may (subject to the stipulations of his policy) claim as for a total loss by giving due notice of abandonment of freight to the insurer, who is then empowered, as representative of the shipowner, to take all the measures which he might have taken to save freight. (2 Arn. on Ins. [4th ed.], 909, 912,

913, 960, 963; *Center* v. *Am. Ins. Co.*, 7 Cow., 583; S. C.,
4 Wend., 46; *Whitney* v. *N. Y. Firemens' Ins. Co.*, 18 J. R.,
208.)    These are cases of constructive or technical total loss.
But where the circumstances are not such as to justify an
abandonment, or being such, yet the shipowner omits to
abandon, it is well settled that it is his duty to make all
reasonable efforts to forward the cargo, and his omission to
do so precludes a recovery for a total loss, and in some cases
any recovery.    As to the insurer on freight, in case the ship
is disabled the shipowner should either himself complete the
performance of his contract of transportation and earn the
freight, or by a timely abandonment enable the insurer, if
he choose, to perform it for his own benefit.    (2 Arn. on Ins.
[4th ed.], 963, 909.)    Where the vessel is damaged, but not
to such an extent as to constitute a technical total loss, the
shipowner is bound to repair her and complete the voyage
if practicable, and the owner of the goods must submit to
all reasonable delay ; a failure so to repair or a voluntary
giving up of the cargo to underwriters short of its destination,
in such a case, deprives the shipowner of all claim against
the insurers on freight.    (*Griswold* v. *N. Y. Ins. Co.*, 3
J. R., 321; *Allen* v. *Mercantile Mutual Ins. Co.*, 44 N.
Y., 437.).    The last mentioned case is cited by the plaintiff's
counsel as an authority for the proposition that if the vessel
be totally lost the loss of freight is absolutely total, and he
quotes a statement in the opinion of LEONARD, J., that had
the injury to the brig resulted in a technical total loss, the
expense attending the forwarding of the flour and wheat
would have justified the surrender free of freight to the
insurers on cargo, and a claim against the insurers of freight
for a total loss of the freight money, citing *The Am. Ins.
Co.* v. *Center* (4 Wend., 46).    The facts found in respect to
the expense of forwarding the cargo were that the cargo,
consisting of wheat, was damaged — that it would have been
unsafe for any vessel to take it on board, and it would have
cost double the freight to be paid to the brig.    That to send
it by rail would have been equally expensive, and that it

would not have sold for enough to pay the freight. It was this expense, exceeding the selling value of the goods, and not merely the total loss of the brig, which would have caused the actual total loss of freight, though under the authority cited by the judge the total loss of the vessel would have entitled the assured to abandon the freight, and thus claim for a total loss. Those cases which speak of the total loss of the vessel involving a total loss of freight refer to a constructive total loss of freight which gives the right to abandon, and not to an actual or absolute total loss, which would authorize a recovery without abandonment. (4 Wend., 46; 7 Cow., 583; 18 J. R., 208.) In *Bradhurst* v. *Col. Ins. Co.* (9 J. R., 17, 19) there was a total loss of the vessel, and it was held that the same principle which required the insured on freight to repair his vessel when disabled, required him to tranship and forward the cargo when his vessel was lost, and that if it were in his power to do so and he did not, there was the same reason that he should be precluded from placing the consequences of that neglect upon the insurer. (See, also, *Hugg* v. *Augusta Ins. Co.*, 7 How. [U. S.], 595.) There are many other cases to the same effect, and the elementary writers agree upon the rule that if the vessel is lost it is the duty of the master or shipowner (at least in respect to the insurer on freight) to tranship the goods or send them on by another conveyance, and even by land carriage, if he can with reasonable endeavors and at a reasonable expense, and that if he neglect to do so, the insurer on freight is chargeable only in the same way and to the same extent as if the duty had been performed, and the loss will be partial or total according to the amount so adjusted. (2 Parsons' Mar. Law, 372, 386.) The same rule is laid down in Phillips on Insurance, section 1632, but qualified by the condition that the goods can be forwarded at an expense less than the freight for the whole voyage, and in the opinions in *Hugg* v. *Augusta Banking and Ins. Co.* (7 How. [U. S.], 595, 609; *Am. Ins. Co.* v. *Center*, 4 Wend., 53, and *Robertson* v. *Atlantic Mutual Ins. Co.*, 68 N. Y.,

195) the same rule is laid down in general terms.   But it seems on principle that the expense here referred to is simply that of completing the transportation, and that where, by the perils of the sea, the goods are placed in a situation of danger, extra expenses necessarily incurred for saving or taking care of them are not chargeable against the ship-owner or the freight, but against the cargo, and although such expenses, when added to the cost of completing the transportation, may exceed the amount of the freight for the whole voyage, they do not prevent the earning of freight, provided the selling price of the goods at the port of desti-nation would be sufficient to cover all the expenses.   In *Mordy* v. *Jones* (4 Barn. & Cres., 394) it was held that an expense for drying and transhipping the cargo, though equal to the value of the whole freight for the voyage, if less than the selling value of the cargo at its place of destination, did not occasion a total loss of freight or justify the master in leaving the goods behind, or selling them at the intermediate port and that the insurers on freight were not liable, as the freight might have been earned, (2 Arn. on Ins. [4th ed.], 967, 968, and the case of *Heyliger* v. *N. Y. Firemens' Ins. Co.* (11 J. R., 85) is quite in point on this question.   There a vessel bound from St. Croix to New York was stranded at Shrews-bury and lighters sent down from New York to save the property.   The vessel was a total loss but the cargo was brought to New York and it was held that these expenses were chargeable, not to the shipowner or the freight, but against the insurers on cargo.   The court say (p. 88) that the expenses were incurred in laboring for the safety and recovery of the cargo from shipwreck.   That the expense of conveyance in another vessel or boat, strictly so considered, ought to fall on the shipowner and not on the shipper of the goods, but not the expense of salvage.   As the expense of transportation from the place of the shipwreck to New York was not separated or stated in the case the whole expense was charged on the cargo and freight as general average and the insurers of the cargo compelled to contribute, the freight

contributing on one-half of its amount. The freight in that case was $1,444, and the expenses $1,294. The contributive share of the expenses charged against the freight in that case was only $87.70. (See, also, *Searle* v. *Scovell*, 4 Johns. Ch., 219, and authorities cited.)

It is evident that had the master or shipowner in the present case incurred these expenses and sent on the cargo, but a small portion of the expenses would have fallen on the freight and the principal part of it would have been earned. In such a case, if the owners of the goods or their insurers are willing to take charge of the goods at the place of the wreck, the master may still earn his freight by offering to carry on the goods. If the owners of cargo insist on taking it they must then pay full freight. If by mutual consent the cargo is delivered up to the owners or abandonees of cargo at the place of the wreck after such an offer, freight *pro rata* is earned. (*Smyth* v. *Wright*, 15 Barb., 51.) The master or shipowner is not justified in such a case in giving up the cargo without taking any measures to secure his freight and then claiming indemnity from his insurers, unless by due abandonment to them he enables them to protect themselves.

It is not necessary at this stage of the case, for reasons hereafter stated, to pursue the inquiry as to the expense of completing the transportation of the cargo in question. All that is necessary now to be inquired into is whether the circumstances proved by uncontroverted evidence, were such as required the court to direct a verdict on the ground that there was an actual total loss of freight, or in other words whether they established that by the perils of the sea the ultimate earning of any freight was rendered impossible or practically hopeless; for that must be the test. By insuring the freight separately, the shipowner assumed the same relations towards the insurers on freight, as though he had no interest in the cargo, and was bound to pursue the same course for the purpose of saving freight. The material question is, could he have saved it or any part of it? To

sustain this judgment he must clearly establish that he could not.

The circumstances of the wreck were as follows : The ship having nearly accomplished her voyage from Calcutta went on shore on Deal Beach on the third of February. The hope of getting her off and saving her was not given up till the twenty-first of March, when a survey was held and she was condemned. During all that period she remained entire, aground on the beach, and partly out of water at all tides, and there was ample opportunity to take out her cargo and tranship it on other vessels. There is no proof that such assistance could not have been obtained by the master or owner. It is conceded that they made no effort to do so, but permitted the Coast Wrecking Company without objection, or any claim in respect to freight, to take possession of the cargo and tranship and deliver it at New York to the insurers on cargo, and to subject the cargo to a large claim for salvage. This course would have been proper if the plaintiff had given due notice of abandonment of the freight to the defendant and thus enabled it to protect itself. But in the absence of any such notice he was bound to use all reasonable endeavors to tranship the cargo and save the loss of freight, and at all events to offer to do so, and thus entitle himself to freight *pro rata*. There is no proof that he was unable to do so and the judge refused to submit to the jury the question whether the owners or master, might by using the same means which the Coast Wrecking Company used, or by employing that company, have saved and landed in New York that portion of the cargo which was saved and landed by it. This we think was the material question in the case. The abandonment of the ship did not interfere with the performance of this duty in respect to the cargo. The master or shipowner could have held on to that, notwithstanding. (1 Pars. Mar. Law, 158, 160.) Neither could the abandonment of the cargo deprive the shipowner or his insurer on freight of the right thus to earn the freight. He had a lien on the cargo for the purpose of earning freight, which was paramount to

the rights of the abandonces of the cargo (1 Pars. Mar. Law, 158; *Allen* v. *Mercantile Ins. Co.*, 44 N. Y., 437), and he could and should have insisted on doing so.    In the case last cited a shipowner was held to have discharged his insurers on freight from all liability, by voluntarily giving up the cargo at an intermediate port where the vessel was wrecked, to the insurers on cargo.    The Coast Wrecking Company brought the cargo to New York where it was sold and the net proceeds were $46,858.95 out of which the compensation of the Coast Wrecking Company, which was adjusted between that company and the insurers on cargo at forty per cent, was paid.    It amounted as thus adjusted to $18,743.58. The freight, at the rate insured, on the proportion of cargo which was delivered, is stated to amount to $16,019,00, and it is now claimed that as the expense of completing the transportation of the cargo exceeded the amount of freight which would have been earned by so doing, it was impossible for the plaintiff to have earned any freight, and consequently there was an absolute total loss, and nothing to abandon.    In answer to this it is claimed that this amount paid to the Coast Wrecking Company was not chargeable against freight, but was for saving the cargo from loss.    That it or the greater portion of it was an expense incurred for the benefit of the cargo and chargeable against it.    That it was occasioned by a peril insured against and the insurers on cargo were liable for their due proportion, and that deducting this, there was a large amount saved applicable to freight.

There is no doubt that had the master paid these expenses and delivered the cargo, the shipowner would have been entitled to collect his whole freight, and in addition, to be reimbursed the extra expense of saving and transhipping the cargo, it being an expense arising from the necessity of the case and which he could lawfully have incurred for account of the owner of the cargo ; and that the insurers on cargo would have been obliged to pay it. (5 J. R., 262; 4 Johns. Ch., 219; 11 J. R., 85.)    If to be regarded in whole or in part as salvage, it was as has been before shown

a lien upon both cargo and freight, in favor of the salvors, and not an expense to be charged against freight. But a further difficulty stands in the way of sustaining this judgment on the ground that the expense of forwarding the cargo would have exceeded the whole freight which could have been earned. The fact was not proved so as to have authorized the court to direct a verdict on that ground, nor was the cause tried on that theory. The proof was that the insurers on cargo voluntarily paid the sum of $18,743.58 to the Coast Wrecking Company, a corporation in which they were interested as stockholders; there was no proof that the amount was reasonable, or that if the master or shipowner had employed tugs or steamers to tranship the cargo it would have cost any such sum. All that appears is that eleven loads of goods were brought from the wreck by boats, some of which were owned and others employed by the wrecking company, and no special danger or difficulty in transhipping the cargo was shown. It was not much matter to the insurers on cargo how much they paid the Coast Wrecking Company, if, as they claim, it was to be off-set against the freight, and the loss was to fall on the insurers on freight. The adjustment therefore of the amount of expenses was not very conclusive. It was not shown that the plaintiff, or the defendant, had the plaintiff abandoned the freight to it, might not have employed tugs or boats to perform the same service, and had they done so there would have been no salvage but simply labor to be paid for. Had the case been tried on its real merits, these would have been proper subjects of investigation. And if it were found that the master or owners could by reasonable endeavors have delivered the cargo, the loss would have been adjusted on the theory that they had done so, according to the rules laid down by Phillips and Parsons before referred to.

The plaintiff makes the further claim that by a stipulation in the policy the loss was converted into a total loss by reason of the loss of the vessel and more than one-half of the freight. The clause is that no claim for a total loss shall

be made, unless in case of the loss of more than fifty per cent of the freight on board and also the actual or technical total loss of the vessel under the policies of insurance on her. This clause declares merely what amount of loss is requisite to constitute a constructive total loss, and accords with the law in that respect. It does not provide that the insured may claim for a total loss without abandonment where there is not an absolute total loss; but that he shall not claim for a total loss unless a certain amount of damage has been sustained. The rule is well understood that where there is only a constructive total loss, the assured, if he wishes to claim for a total loss, must as a necessary preliminary to so doing give due notice of abandonment. (2 Arn. on Ins. [4th ed.], 912, 913.)

It is further claimed on the part of the plaintiff that by the abandonment of the ship to the insurers the shipowner lost all right to freight. That such freight passed to the abandonees of the ship, and consequently the owner had nothing to abandon to the insurer on freight. Such is the law in England, and there an abandonment of the ship entitles the abandonee to all the freight which may afterwards be recovered, and which was pending at the time of the abandonment, whether earned before or afterwards. But it is also there held that where the shipowner thus loses his freight and it passes to the abandonees, he cannot recover against the insurers on freight for two reasons, first, because he has lost it by his own act; and secondly, because it has been in fact earned. (*M'Carthy* v. *Abel*, 5 East, 389; *Wilson* v. *Willes*, 7 id., 124; 2 Arn. on Ins. [4th ed.], 969, 971, 911; *Scottish Mar. Ins. Co.* v. *Turner*, 1 Macq. [H. of Lds. Cas.], 334.)

In this State the rule is different in both respects. It is here settled that in case of an accepted abandonment of the ship before the completion of the voyage the freight must be apportioned *pro rata itineris*, and the part earned before the disaster belongs to the shipowner or his representative the insurer on freight, and only that subsequently earned to

the abandonee of the ship. (3 Kent Com., 333.) And the abandonment does not deprive the owner of his recourse against the insurer on freight for the portion lost by the abandonment. (*Davy* v. *Hallett*, 3 Caines, 16.) But it is only when the cargo is carried to its destination in the original ship, that any part of the freight goes to the abandonee of the ship. If the transportation is completed by a substituted vessel, the original vessel being wholly disabled, the original owners are entitled to the freight, and not the abandonees of the ship. (*Hickie* v. *Rodocanachi*, 28 L. R. [Ex.], 273; 4 H. & N., 455.) The abandonment of the ship therefore in the present case did not divest the insured of the power to earn the freight or to abandon to the insurer on freight. The passage cited by plaintiff's counsel from the opinion of KENT, Ch. J., in *Davy* v. *Hallett* (3 Caines, 16), viz. : "The abandonment of the vessel took away from the insurer on freight the *spes recuperandi*, or the chance of an ultimate recovery of the subject, because as between the insurers on the ship and freight the claim of the insurer on the ship to the freight must be admitted to preponderate" applies only to the *pro rata* proportion of the freight which was earned after the abandonment, or the disaster which caused it. Where there is also freight partly earned before the disaster, that is a proper subject of abandonment or in the absence of an abandonment for deduction from the loss. This appears quite clearly from the very case from which the citation is taken, for in that case the insurers on freight were actually allowed a deduction of a small rateable proportion of the freight, earned before the abandonment, which the court say did not pass with the abandonment of the ship. (3 Caines, 22.) The abandonment of the ship therefore in the present case, after the voyage had been nearly completed, the vessel being totally disabled, passed no right to any freight to the abandonees of the ship. Whatever might be subsequently recovered belonged to the shipowner or his insurers on freight.

The defendant makes the claim that the facts of this case

establish that freight not only could have been, but actually was, earned. That depends in a great measure upon the capacity in which the Coast Wrecking Company are to be regarded as having acted. If they were the agents of the insurers on the cargo, and the master surrendered the cargo to them, as such, at the place of the wreck, without offering to complete the transportation, then no freight was earned, as there was not such a voluntary acceptance as would make the shipper liable for freight *pro rata*, and the defense must rest upon the ground that the act of the shipowner or master in thus surrendering the cargo was fatal to his claim against the insurers on freight. (44 N. Y., 437.) The case of *Atlantic Insurance Company* v. *Bird* (2 Bosw., 195) is in point to show that where the shipowner abandons all care of the cargo, and it is picked up and saved by the owner or insurer of cargo, no freight is earned. If the wrecking company was employed by or can be treated as the agent of the shipowner in transhipping and delivering the cargo saved, then beyond all question freight was earned, and the extra expenses were chargeable to the cargo. But the evidence tends to show that the wrecking company was not employed by any one, but was a volunteer and claimed to act in the capacity of salvor, and the master accepted its services as such, and the question arises what is the effect of a delivery of the cargo by salvors under such circumstances? Where the cargo is delivered and freight received by the ship after a salvage service has been rendered to it, the freight as well as the ship and cargo must contribute to the salvage though not completely earned or due when the service was rendered. (*The Peace*, 1 Swabey, 85.) And if a vessel is brought into port by salvors and delivers her cargo the owners are undoubtedly entitled to their freight and it must contribute to salvage. This shows that inchoate or partly earned freight is a subject of salvage. I am not aware that there is any definite adjudication on the case where the vessel, having reached the coast, is stranded and the cargo saved by salvors and delivered by them at the port

of destination, but the equity of the case would seem to be to regard salvors as acting for the benefit of all parties concerned, according to their respective interests, and on that ground entitled to compensation from each interest, — as saving the ship and inchoate freight for the benefit of the shipowner and his insurers — and the cargo for the benefit of its owner or insurer. At all events it would seem just to hold that where without previous request, persons claiming to act as salvors, perform acts which the shipowner had the right to perform for his own benefit, he can ratify and adopt those acts and thus entitle himself to the benefit of them. If this be the true rule, then the shipowner, as between himself and his insurers on freight, is clearly bound to interpose his claim and adopt such course as to secure the freight and procure a proper adjustment of the salvage expenses, so that the cargo should bear its just proportion of them. And if he fails in that duty and the freight is thereby lost, such loss should not fall on the insurers. There is no equity in a case like the present in allowing the insurers on cargo to take it free from freight, or to receive the entire proceeds of sale without providing for freight. If they had insured it for its full value in New York the case would be different, but they did not so insure. The elements of such value, viz., the invoice cost at Calcutta, the freight from there, and a reasonable profit to the importer, were each separately insured. They insured the invoice cost and not the freight, and paid the loss on such invoice cost only. On what they sold they realized the full value in New York, which necessarily included the value of the freight. Whatever the proceeds were, they were enhanced to the extent of the freight. There is no more equity in their retaining the whole proceeds without accounting for any freight, than there would be in case goods not insured by them, but by some other company, had been included in the sale ; neither can they offset the expenses against the freight. The salvage on the goods saved, as already stated, was not properly chargeable against the freight. It was paid for saving the insurers from a loss

of the goods by a peril insured against. Only the expenses of transportation from the wreck were properly chargeable against the freight, together with its contributory share of salvage. The plaintiff was undoubtedly entitled to be fully indemnified for cargo, freight and profits; but if he has failed to abandon, and unnecessarily pursued such a course that the freight which was or might have been saved for the benefit of the insurers on freight, has gone to reduce the loss of the insurers on cargo, he and not the defendant should bear the consequences, or his recourse should be to the insurers on cargo for a readjustment of the loss.

We think a case was not made out which entitled the plaintiff to recover as for a total loss of freight without an abandonment, and that the judgment must be reversed and a new trial ordered, costs to abide the event.

All concur, except Miller and Earl, JJ., absent.

Judgment reversed.