■ TRIMBLE-WATERMAN ASSOCIATES et al., Appellants, v CERTAIN UNDER-WRITERS AT LLOYD'S et al., Respondents.—Order, Supreme Court, New York County, entered on August 13, 1975, denying plaintiffs-appellants' motion for partial summary judgment in the nature of declaratory relief, affirmed, with $60 costs and disbursements of this appeal to respondents. In the course of a landing operation appellant Trimble-Waterman Associates' aircraft, which was insured by respondents for the "agreed value" of $300,000, crashed. Prior to the crash the aircraft had a market value in the neighborhood of $180,000. The damaged aircraft sold for approximately $37,000, was subsequently fully repaired, and is presently in commercial service. Estimates of the cost of repairing the damage, made at respondents' request, range from $125,000 to $136,000. Adverting to a doctrine which prevails in marine insurance law, appellants claim they suffered a total loss and therefore are entitled to the $300,000 agreed value, less salvage, because the projected cost of attempting to restore the aircraft to its condition prior to the crash exceeds 50% of the aircraft's projected value after repair. (See *Corbett v Spring Garden Ins. Co.,* 155 NY 389, 394.) Since appellants concededly did not sustain an actual total loss, for the aircraft was neither lost beyond recovery nor damaged completely beyond repair, their claim is necessarily predicated on the concept that a constructive total

loss was incurred. A tender of abandonment is a prerequisite to any claim for a constructive total loss. *(Hubbell v Great Western Ins. Co.,* 74 NY 246, 260; 31 NY Jur, Insurance, § 1402.) But where, as here, the parties expressly agreed that there would be no abandonment to the respondents, a claim for a constructive total loss is untenable. Moreover payment of the agreed value is not the only settlement option open to the respondents, for Condition No. 3 of the insurance policy provides as follows: "3. LIMIT OF LIABILITY; SETTLEMENT OPTIONS: NO ABANDONMENT. The liability of the Underwriters for direct physical loss of or damage to the aircraft shall not exceed the amount of insurance [i.e., agreed value by virtue of Endorsement No. 5] set out in the Declarations, less the applicable deductible, nor what it would cost to repair or replace the aircraft or parts thereof with other of like kind and quality, and without compensation for loss of use. The Underwriters may pay for the loss in money or may repair or replace the aircraft or parts thereof, as aforesaid * * * or may take all or such part of the aircraft at the agreed or appraised value, but there shall be no abandonment to the Underwriters." This language clearly and unambiguously limits respondents' liability to the agreed value, the repair cost or the cost of replacing the aircraft whichever is the lesser. This interpretation does not reduce appellants' right to recover the agreed value to an illusion, for, as Special Term observed, the advantage of the term, agreed value, to the assured under this contract is that it eliminates the possibility that the insurer's liability could be satisfied by paying the market value when the aircraft could neither be repaired nor replaced. Concur—Murphy, Lupiano, Silverman and Yesawich, JJ.; Kupferman, J. P., dissents in the following memorandum: The problem in this case arises out of the crash of a Turbo Commander 68OW aircraft at Westchester County Airport in 1972. At the time the aircraft was owned by Trimble-Waterman Associates, and Rockwell International Credit Corporation (North American Rockwell Credit Corporation) was the seller-mortgagee of the aircraft with a chattel mortgage and a security agreement. The aircraft was insured with the defendants for $300,000 on an "agreed value" policy. After the crash, it was sold as salvage for some $37,000, as to which there is no dispute. The insureds claim $300,000 less the salvage and less a $3,000 deductible, which deductible is not in dispute. Prior to the accident, the market value of the aircraft was either $160,000 or $180,000 (the latter figure was conceded by the defendants in an interrogatory), but the mortgage was substantially in excess of the larger amount. That the mortgage was higher than the value was due to the fact that after the purchase of the aircraft, its value was considerably reduced because of the introduction into the market of a later model. The "agreed value" policy served the purpose, and the premiums upon it reflected it, of covering the owner and the holder of the chattel mortgage for the greater liability. It is the contention of the underwriters, which position was accepted by the court at Special Term, that there was only a partial loss, and, therefore, that the defendants could pay the lower of the agreed value or the repair or replacement cost. Plaintiffs-appellants contend that the aircraft is a total loss and, in any event, that it should be so considered when the cost of attempting to repair it exceeds one half of the value it would have if repaired. This follows a principle of marine insurance that the face amount of a policy is paid in the event of a total loss (actual or constructive), and that a constructive total loss occurs when the cost of repairs exceeds 50% of the value it would have if repaired—a form of "point of no return". (See *Corbett v Spring Garden Ins. Co.,* 155 NY 389, 394–395; see, also, 40 App Div 628, affd 167 NY 596.) It being axiomatic that if there

is any ambiguity in an insurance policy, it must be construed against the insurer *(Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356), the "agreed value" arrangement should be given effect, and the plaintiffs-appellants paid what they obviously bargained for, an amount sufficient to cover in excess of the mortgage, and partial summary judgment in the nature of declaratory judgment granted to that effect.