## CAZE AND RICHAUD

*v.*

## THE BALTIMORE INSURANCE COMPANY.

*Absent....*TODD, *J.*

The underwriters upon a cargo are

ERROR to the Circuit Court for the district of Maryland in an action of *inebitatus assumpsit* for freight

The Reporter was absent.

of goods by the ship Hamilton from Bordeaux to Halifax.

In the Court below a case was agreed by the parties, which was in substance as follows.

On the 28th of July, 1805, *Mr. John Ducorneau,* of Bordeaux, the agent of the Plaintiffs, shipped for them, there, on their account, on board the ship *Hamilton,* of *which they were owners,* a cargo of the value of $22,986 on a voyage from Bordeaux to *New York* where the Plaintiffs resided. On the voyage she was captured by a British vessel of war and carried into Halifax, where the ship and cargo were condemned. Within due time after the Plaintiffs heard of the capture, they abandoned as for a total loss to the Defendants who accepted the abandonment and paid the amount insured.

From the sentence of condemnation in the vice admiralty Court as to the vessel and cargo, but not as to freight, there was an appeal, upon which the sentence was reversed and the proceeds of the vessel and cargo were restored. The proceeds of the cargo were paid over to the underwriters; but the sum they received was less than the sum they had paid upon the policy.

The question, upon this case, was, whether the Plaintiffs, who were owners of both vessel and cargo, were entitled to recover from the underwriters upon the cargo, freight from Bordeaux to Halifax.

HARPER, *for Plaintiffs in error,* contended that they were so entitled.

The underwriters who became the owners of the cargo at Halifax, were benefitted by the transportation from Bordeaux. The cargo was liable for its frieght. The underwriters received the whole proceeds. So much thereof as amounted to the value of the freight was received by them to the use of the Plaintiffs as owners of the ship.

PINKNEY, *Attorney General, contra.*

This action certainly cannot be maintained upon an insurer's liability for *freight* under a policy on *cargo.*

not liable for freight pro rata itineris, to the owner of the vessel, who is also owner of the cargo insured, in a case where the vessel and cargo were captured, the cargo abandoned to the underwriters as a total loss and by them accepted, the loss paid, the cargo condemned, restored upon appeal, and the proceeds of the cargo paid over to the underwriters. Freight pro rata itineris is not due unless the owner of the cargo voluntarily agree to receive it at a place short of its ultimate destination.

The case of *Baillie and Modigliani,* 2, *Marsh.* 728, is decisive to that effect : and even if an insurer were liable for freight under the policy, he must be sued upon *that,* and could not be made to answer for it in this form of action.

But it is said that this claim does not rest on the policy ; but founded upon the idea, that as the underwriters became proprietors (by the abandonment and acceptance) of the cargo, or rather of the *proceeds* of the cargo, at Halifax, they succeeded to the burthen as well as to the benefit, and must consequently pay freight *pro rata itineris* to the Plaintiffs as *owners of the ship.*

To this it may be answered, that if any freight was due, it was due from the Plaintiffs themselves, because it was earned while they were the owners of the goods, and because the abandonment could not throw upon the underwriters a responsibility for freight for which the assured were already liable. There could be no privity of contract between the insurers and the ship owners with reference to such freight ; and the ship owners could have no *lien* on the proceeds arising from the sales under the condemnation.

But no freight was due. The goods belonged to the owners of the ship, and of course the bill of lading did not call for freight. On the contrary it declared that no freight was to be paid, " *the cargo being owner's property.*" To *imply* a contract between the owners of the cargo and themselves to pay freight to themselves, and that two against the bill of lading, would be absurd. It follows, that at the time of the abandonment, the Plaintiffs had no right, either complete or inchoate to freight upon the goods insured. If it were even admitted, then, to the utmost extent contended for, that the insurers, accepting the abandonment, took the cargo *cum onere,* they could not be charged with freight in this case, since the thing insured was, when they succeeded to it, free from such a charge. If they became liable for freight they did not take simply *cum onere* ; for the *onus* relied upon by the Plaintiff's counsel did not exist when the subject-matter came to them by abandonment. The abandonment and acceptance must have *created,* not passed, it. If indeed the ship had afterwards per-

formed any service to the underwriters with respect to
these goods, an assumpsit might be implied *pro tanto*
against them; but this demand is for freight supposed
to have been earned while the goods belonged to the
Plaintiffs, and were expressly, as well as from the na-
ture of the transaction, exempt from freight.

CAZE &
RICHAUD
*v.*
BALTI-
MORE
INS. CO.

The doctrine of *lien* which has been spoken of by the
Plaintiffs counsel cannot serve his cause; for the Plain-
tiffs could have no lien for freight which was *not* due;
even if there could be a subsisting lien upon these *pro-
ceeds,* for freight which *was* due.

But freight was not due, for other reasons. It may
be conceded that freight is in some cases due pro *rata
itineris,* where the voyage being intercepted, the owner
of the cargo consents to receive it at a place short of its
destination. But he must be a volunteer. A forced
receipt, as on this occasion, has never been adjudged to
give a title to *pro rata* freight. Besides, this cargo was
lost; and even if the proceeds had covered the value, it
may well he questioned, notwithstanding the *dictum* in
*Baillie and Modigliani,* whether by taking the proceeds,
the owner gives a right to *pro rata* freight.

But however that may be, it can scarcely be maintain-
ed that a forced acceptance (by the owner or by an in-
surer to whom an abandonment has been made) of pro-
ceeds far short of the value, (as was the fact here) will
give such a right.

HARPER, *in reply.*

The case in Marshall wants the essential ingredient
of ownership in the person making the abandonment.
It was too a case of partial loss. The Defendants in
the present case are sued, not as underwriters, but as
owners of goods liable for freight. The benefit they
receive from the transportation of the goods is a good
foundation for an implied promise. The decision in
Burrow's reports, of consent to receive the cargo liable
*pro rata itineris* has never been questioned.

*February 24th....*STORY, J. delivered the opinion of
the Court as follows :
VOL. VII

CAZE &
RICHAUD
*v.*
BALTI-
MORE
INS. CO.

The present action is brought to recover freight *pro rata itineris,* under the following circumstances:

The Plaintiffs were the owners of the ship Hamilton and cargo, and effected insurance of her cargo on a voyage from Bôrdeaux to New York. The sum of $11,000 was underwritten by the Defendants—the sum of $10,000 at Philadelphia, and the residue of the value of the cargo ($1986,) was left uninsured. During the voyage the ship and cargo were captured, carried into Halifax, and there condemned. The Plaintiffs abandoned to the underwriters and received payment for a total loss. An appeal from the sentence of condemnation was interposed and the sentence finally reversed, and the proceeds of the cargo, which had been previously sold by order of Court, were paid over to the underwriters in proportion to the sums underwritten by them respectively.

We are all of opinion that the Plaintiffs are not entitled to recover in the present action.

In the first place the Court are satisfied that, as between the insured and the underwriter on the cargo of a ship, the latter is in no case responsible for the payment of freight, whether there be an abandonment or not. It is a charge on the cargo against which he does not undertake to indemnify the owner; and if authority be necessary to support the position, it is fully borne out by the doctrine of lord Mansfield in *Baillie v. Modigliani, Marshall,* 728.

In the next place we are all of opinion that no freight whatsoever was, under the circumstances of this case, due. Freight, in general, is not due unless the voyage be performed. Here the ship and cargo never arrived at their port of destination, and of course the whole freight could not be due. Was a *pro rata* freight due? We think not. The whole class of cases resting on the authority of *Luke v. Lyde (2 Burr.* 882.) proceed on the ground that there is a voluntary acceptance of the goods themselves at an intermediate port; and not, as in the present case, a compulsive receipt from the hands of the admiralty after capture and condemnation, and ultimate restoration upon the appeal. There is, in our judgment, no equity to support such a claim; and although

it receive countenance from some remarks incidentally thrown out in *Baillie v. Modigliani*, the current of more recent authority, as well as of principle, clearly points the other way.

It may be further added that as between the insured and the underwriter the existence of a *lien* on the cargo for freight does not vary the legal responsibility of the underwriter on such cargo after an abandonment.

The judgment of the Circuit Court is affirmed with costs.