## SMYTH vs. WRIGHT.

Where a vessel is wrecked, during her voyage to the port of destination, and the shipper abandons the cargo to the insurers, who accept the abandonment and pay the shipper as for a total loss, the receipt of the goods at the place of the accident, by the insurers, is equivalent to a receipt by the shipper in person, and discharges the carrier from further responsibility, and entitles him to a *pro rata* compensation for the transportation of the goods to that place.

A sale by the owner of a cargo, at an intermediate port, is an acceptance of the cargo at that port, subjecting him to *pro rata* freight. And an abandonment to the underwriters, and an acceptance by them, is equivalent to a sale.

In an action by the shipper, to recover freight *pro rata itineris*, under such circumstances, he is entitled to judgment for moneys expended by him for canal tolls, and for freight in proportion to the part of the voyage performed.

This was an action of assumpsit, brought to recover payment of freight, *pro rata itineris*, of a cargo of wheat shipped by the defendant on board the plaintiff's vessel, at Sandusky City, Ohio, to be transported thence to Oswego, and there delivered to the defendant; he paying charges, to wit, lake freight at 8 cents per bushel. The cargo was insured by the defendant in the office of the Merchants' Mutual Insurance Company, of Buffalo. The vessel proceeded upon her voyage, and was wrecked on Lake Ontario, without fault of the master or crew of the vessel, and the defendant abandoned the cargo to the insurers, who accepted the abandonment and paid the defendant as for a total loss of the wheat. The plaintiff sent an agent, to take charge of the vessel and cargo, and was told by the agent of the insurance company, whom he found at the vessel, that he had possession of the cargo, and would take charge of it, as it had been abandoned to the company. The plaintiff's agent informed the agent of the insurers of his business there. At the time of the disaster the vessel had performed three-fourths of her voyage, in distance, and had paid the Welland Canal tolls, to the amount of $103,25. The wet wheat upon the vessel required immediate attention. The cargo could have been taken off the vessel on lighters and put on another vessel. One witness testified that it would have been worth 15 cents per bushel to light the cargo and take it to Oswego. The plaintiff recovered judgment for

$366,76, being the pro rata freight, including the canal tolls; and from this judgment the defendant appealed.

*W. H. Shumway*, for the plaintiff.

*Edwin Allen*, for the defendant.

*By the Court,* W. F. ALLEN, J. This action was tried by the court, and the case should have shown what facts were found by the judge, and his conclusions of law. (*Code*, § 268.) The facts proved are not specified. As the evidence is not conflicting, and the facts not complicated, we may, without sending the case back for resettlement, assume that the judge found such facts as are warranted by the evidence and will support the judgment.

The evidence warrants the conclusions, 1. That the cargo was insured, and upon the happening of the disaster to the vessel spoken of in the evidence, was abandoned by the defendant to the insurers, who assented thereto, and accepted the abandonment. 2. That the plaintiff did not refuse to perform his contract by transporting the wheat to Oswego and delivering it at that port to the shipper or his assigns, but was present, by his agent, willing and ready and offering to do his duty in the premises. 3. That there was no direct refusal, on the part of the defendant, or the insurers, after the abandonment of the cargo, to suffer the plaintiff to deliver at Oswego; as there was no formal request on the part of the plaintiff, to be permitted to do so. 4. That the contract of affreightment, under which the wheat was shipped, was voluntarily abandoned by the plaintiff and the insurers, after the acceptance of the abandonment, and the latter, with the assent of the former, voluntarily received the wheat at the place of the disaster; each party preferring thus to terminate the contract, rather than proceed to a strict performance of the original contract.

From these facts results the defendant's liability to pay freight *pro rata itineris,* as upon an assumpsit implied by the volun-

Smyth *v.* Wright.

tary acceptance of the goods at a place short of the port of destination.

A contract of affreightment is like every other contract, and either party can insist upon a strict performance by the other. In this case the defendant, or the insurance company as his assigns, having succeeded to his rights, might have refused to receive the wheat at any place other than Oswego, and upon a failure of the plaintiff to deliver it at that place, would not have been liable for any part of the freight, and could have called upon the ship owner to respond in damages for the non-performance of his contract. So the plaintiff might have insisted upon his right to deliver the cargo at the port of destination, and would have been allowed a reasonable time to repair his own vessel or to procure another for that purpose; and had the shipper refused to do so he would have been entitled to full freight, and would have had a lien upon the cargo, for it. A third course was pursued. The shipper (for I assume, upon this branch of the case, that a receipt of the goods by the insurers was equivalent to the receipt by the shipper in person) voluntarily accepted the goods at the place where the voyage was interrupted, which discharged the carrier from further responsibility, and entitled him to a pro rata compensation for the transportation of the goods to that place. These propositions are fully sustained by the authorities, both English and American, from the cases of *Luteridge* v. *Grey* and *Luke* v. *Lyde* to the present time. (*See Luteridge* v. *Grey, cited in Abbott on Shipping,* 438; *Luke* v. *Lyde,* 2 *Burr.* 882; *Abbott on Shipping,* 434, 435, 436, 448, 406; 3 *Kent's Com.* 219, 228, 9; *Caze* v. *Baltimore Ins. Co.,* 7 *Cranch,* 358; *Robinson* v. *Marine Ins. Co.,* 2 *John.* 323; *Coffin* v. *Storer,* 5 *Mass. Rep.* 252; *Bork* v. *Norton,* 2 *McLean,* 422; *The Ship Nathaniel Hooper,* 3 *Sum.* 542; *Parsons* v. *Hardy,* 14 *Wend.* 215; *Welch* v. *Hicks,* 6 *Cowen,* 504; *Williams* v. *Smith,* 2 *Caines,* 13.) The same rules predominate in the maritime law. (See per Lord Mansfield in *Luke* v. *Lyde, supra,* citing from the laws of Oleron.) The cases relied upon by the defendant's counsel were actions upon policies for freight, in which it was held that the plaintiff was bound to show that

the loss of freight was occasioned by some peril insured against, by which freight could not be earned, and not by reason of the omission of the master to insist upon his right to earn freight. (*Herbert* v. *Hallett,* 3 *John. Cases,* 92. *Griswold* v. *New-York Insurance Company,* 3 *John.* 321. *Caze* v. *Baltimore Ins. Co., supra.*) In actions of covenant upon charter parties, the plaintiff claiming to recover upon the original contract and not upon an implied assumpsit growing out of the voluntary acceptance of the goods at a place short of the port of destination. (*Cook* v. *Jennings,* 7 *T. R.* 381.) The abandonment of the cargo by the defendant and the acceptance thereof by the insurers, divested the defendant of all his rights as owner, and placed the insurance company in his place, so that an acceptance of the goods by the latter was equivalent to an acceptance by the defendant. The cargo had been transported thus far at the request and upon the promise of the defendant to pay the freight, and was delivered to persons authorized by the defendant to receive it. Had the wheat been brought to Oswego, and delivered to a vendee of the defendant at his request, no question would have been made as to his liability. So, had the property been delivered at any other place, to any party, upon the express direction of the defendant, just as little doubt would have existed as to his liability for freight pro rata. By the abandonment and acceptance, the insurers stand in the place of the defendant, and he is bound by their acts. The defendant is not the loser by the acceptance of the wheat at the place of the disaster, charging him with pro rata freight, rather than a delivery at Oswego, charging him with full freight. A sale by the owner of the cargo, at an intermediate port, is an acceptance of the cargo at that port, subjecting him to pro rata freight. An abandonment to the underwriters, and an acceptance by them, is equivalent to a sale. (*Hughes on Ins.* 328. *Walden* v. *Phœnix Ins. Co.,* 5 *John.* 310, *per Thompson, J. at p.* 324.) In *Luteridge* v. *Grey,* cited above, it was held by the house of lords in England, that shippers were liable for freight pro rata, in a case like this ; the cargo having been abandoned to the underwriters, and they having received the goods at an intermediate port.

Smyth *v*. Wright.

The only remaining question is upon the measure of compensation adopted by the judge. He adopted the rule laid down in *Luke* v. *Lyde*, taking into consideration, and making a part of the allowance, the amount paid for canal tolls. That is, the judge decided that the plaintiff was first to be paid the amount disbursed for canal tolls, and the balance of the freight in proportion to the part of the voyage performed. This, as before said, was in accordance with *Luke* v. *Lyde*, which was followed in *Robinson* v. *Marine Insurance Company*, (2 *John*. 328.) This would seem to be a just rule; as the plaintiff, if entitled to recover any thing, is entitled to recover for services bestowed, and expenses incurred. The contract implied by law is to pay for these, and not for the benefit which the shipper has received from them. It may have been more or less advantageous to him to receive his goods at the intermediate port, rather than at the port of destination; and whether more or less cannot be determined with any certainty. And the whole investigation of comparative benefits and probable expenses of a delivery at the port of destination is quite too uncertain to be entered upon; while the rule adopted is certain, and corresponds with the contract which the law implies, upon the acceptance of the goods. Although the soundness of this rule has been questioned, in Massachusetts, and by the annotator of Abbott on Shipping, it is the settled law in this state. The case in Massachusetts, (*Coffin* v. *Storer*, 5 *Mass. Rep*. 252,) in which the rule was questioned, was entirely unlike the case of *Luke* v. *Lyde* and this case, and was properly decided, upon a different principle. And the strictures upon the measure of compensation in cases like the present, were not necessary to the result in that case.

The judgment in this action is affirmed.

[ONONDAGA GENERAL TERM, October 4, 1852. *W. F. Allen, Selden* and *Hubbard*, Justices.]