[Cite as *Diso v. Dept. of Commerce*, 2012-Ohio-4672.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| RICHARD B. DISO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-25 |
| DEPARTMENT OF COMMERCE | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Civil appeal from the Delaware County
Court of Common Pleas, Case No. 10CV-F-
07-1088

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     October 8, 2012

APPEARANCES:

For Plaintiff-Appellant

GLENN LITTLEJOHN
1500 Detroit Ave. #611
Cleveland, OH 44113

RICHARD B. DISCO
523 Shanahan Road
Lewis Center, OH 43035

For Defendant-Appellee

MICHAEL DEWINE
OHIO ATTORNEY GENERAL
HILARY DAMASER
30 East Broad Street, 26th Floor
Columbus, OH 43215-3428

*Gwin, P.J.*

**{¶1}** This case is before the Court on appeal from the March 12, 2012 decision of the Delaware County Court of Common Pleas that affirmed the Ohio Department of Commerce, Division of Financial Institutions' ["Division"], July 7, 2010 Order denying appellant Richard Diso's ["Diso"] 2008 loan officer's renewal application upon a finding that his character and general fitness did not command the confidence of the public and did not warrant the belief that the business will be operated honestly and fairly in compliance with the purposes of R.C. 1322.01 through 1322.12.

### *Facts and Procedural History*

**{¶2}** Diso held a loan officer license between June 15, 2004 and April 30, 2008. (State's Exhibit 7).

**{¶3}** On or about February 26, 2008, Diso sent the Division a "Mortgage Broker/ Loan Officer Notice of Judgment," in compliance with Ohio Adm.Code1301:8-7-19(C). (See, State's Exhibit 6). This form, received by the Division on March 12, 2008, informed the Division of default judgments entered against Diso for credit card debts on October 30, 2007 ("Discover Bank"; $17,539.74 plus interest); December 7, 2008 ("FIACard Services"; $23,820.14 plus interest); and March 18, 2008 ("Capital One Bank"; $12,935.53 plus interest). (T. Apr. 21, 2009 at 26; 34). Attached to the form was a letter and documentation from Diso in which Diso explained his frustration with recently enacted laws that permitted credit card companies to increase interest rates,

> At the time this law went into affect [sic.], I just had surgery and later complications from the surgery. Making my normal minimum payments was not a problem. However, when my rates shot up on all of

my accounts, I was forced to use my IRA account funds to keep up with the outrageous payments. Eventually I emptied the account and called the companies and asked them to lower my payments. They refused and I went into default on all credit cards.

Enclosed you will find my credit reports showing my perfect payment history on all my accounts and when the late payments started in 2006. I wrote and had conversations with Senator Brown's staff, {letter enclosed} and currently working with Senator Voinovich's office to rectify this matter.

I should not have to forfeit my license due to the greed of politicians and no fault of my own. The collection agencies will not take reasonable payments and I refuse to pay the entire amount with penalties and late fees and still have a bad credit rating. That is un American [sic.] and I will fight it forever.

I am asking you not revoke my licenses. This will further destroy my life. I live a cash only life style, which is very difficult and almost impossible in a bad market.

State's Exhibit 6. (Letter dated Feb. 26, 2008 from Diso to the Division of Finance).

**{¶4}** On or about April 24, 2008 the Division received Diso's 2008 loan officer license renewal application. (T. Apr. 21, 2009 at 13; 32; State's Exhibit 4).

**{¶5}** On or about August 7, 2008, the Division sent Diso a "Letter of Investigation" requesting Diso provide the Division with the facts surrounding the unpaid civil judgments. (T. Apr. 21, 2009 at 28-29; State's Exhibit 8).

**{¶6}** In response to its request for information, on November 5, 2008 the Division received a response from Diso that included a letter, copies of the judgment entries, certificates of judgment and three letters of recommendation. (T. Apr. 21, 2009 at 28; 30; State's Exhibit 5; State's Exhibit 9). In the letter, Diso stated,

> In Spring of 2006, interest rates on all my credit cards soared as high as 30%. Up to that point, I had not been late on any cards. I had called all the credit card companies to ask them why my rates were raised and they responded we are allowed by law to raise them. At the time I just had surgery and complications from it. I explained this to the card companies and told them I could make the payments at the original interest rates, but not at the higher rate. They a [sic.] told me they would not lower the rates. I kept making the outrageous payments, taking money from my IRA until it was gone. I then defaulted on the credit cards.

> I called my elected officials, letters enclosed, and asked them under what law was this allowed? To this day none of them has helped me or knew the laws. Imagine, lawmakers not knowing the law. One reason why this country is so screwed up.

> Currently I am not making any payments and have no plans on making payments until I get answers on the law that allows credit card companies to raise rates. I am talking with several law firms to represent me fighting these judgements. [sic.]

> I have 18 plus years as a residential loan officer and have never been in legal or moral trouble. I plan on doing this years to come.[Sic.]

Taking away my licenses will destroy my life. I can give you my resume'
and you can check my past employment. I will continue to fight this and
eventually win.

Please contact me if further information is needed. I will work with
the State, but I am pursuing legal action.

State's Exhibit 5.

{¶7} In a "Notice of Intent to Deny Loan Officer License Renewal" dated January 9, 2009, the Division informed Diso, of its intent to deny his 2008 loan officer license renewal application pursuant to R.C. 119.07. Per R.C. 119.07, the Notice also informed Diso that he had a right to request a hearing, which he did. (State's Exhibit 1).

{¶8} On February 25, 2009, the parties appeared for the administrative hearing. On the record at the hearing, Diso requested a continuance in order to obtain counsel, which was granted by the hearing officer.

{¶9} The administrative hearing reconvened on April 21, 2009, at which time the Division presented its case-in-chief. After the Division presented its evidence, Diso asked for an additional continuance before presenting his case-in-chief, which the hearing officer granted over the Division's objection.

{¶10} The hearing was scheduled to reconvene for Diso's case-in-chief on June 30, 2009. However, the day prior, Diso filed for Chapter 7 bankruptcy, and provided notice to the Division of the filing. Diso requested that the Division stay its administrative proceedings in accordance with 11 U.S.C. 362(a)—the Bankruptcy stay provision. Although the Division disputed the application of Section 362(a), the hearing officer continued the hearing, and later stayed the matter until resolution of the bankruptcy.

{¶11} On October 14, 2009, Diso obtained a bankruptcy discharge. Upon the request of the hearing officer, the parties filed formal statements on their respective positions on whether the Division could proceed. The Division indicated its intention to proceed, and the matter was rescheduled to conclude the hearing on April 28, 2010. A hearing was set for April 28, 2010. Counsel for both parties appeared at the hearing. Diso did not personally appear on April 28; however, several Exhibits were submitted as evidence on his behalf by his counsel. Diso's counsel also strongly argued that the Division could not proceed because of the automatic bankruptcy stay. The Division presented additional testimony concerning the effect, or lack thereof, of the bankruptcy on this case, since Diso had not filed for bankruptcy or given any indication he was insolvent before the hearing began in April 2009.

{¶12} On May 14, 2010, the hearing officer issued a Report and Recommendation concluding,

> [Diso] accumulated over $100,000.00 in debt, which (was discharged in bankruptcy) demonstrates [Diso's] lack of financial responsibility to command the confidence of the public to warrant the belief that his business would be conducted honestly and fairly in compliance with the purposes of the Ohio Mortgage Broker Act. R.C. 1322.041(A)(10).

{¶13} The report concluded that the Division had met its burden of proof, and recommended that the Division deny Diso's 2008 loan officer license renewal application. Diso filed objections, again referencing the bankruptcy and arguing the effect of the automatic stay.

**{¶14}** On July 7, 2010, the Division issued a final order denying Diso's 2008 loan officer renewal application. This order further stated,

> The Division modifies paragraph 34 of the Report and Recommendation to remove the words "financial responsibility" and the last sentence, "The superintendent shall not use a credit score as the sole basis for a license denial [.]" because those words and the last sentence were not included in R.C. 1322.041(A)(6) prior to January 1, 2012 amendments. The Division also modifies paragraph 37 of the Report and Recommendation to substitute the words "lack of character and general fitness" for the words "lack of financial responsibility" because the words "financial responsibility" were not included in R.C. 1322.041(A)(60 prior to the January 1, 2010 amendments.

**{¶15}** Diso did not file an application to renew his loan officer license in 2009. Diso filed an appeal pursuant to R.C. 119.12.

**{¶16}** On March 12, 2012, the Court of Common Pleas affirmed the Division's Order. The trial court found,

> The [bankruptcy] stay was not in effect at the time of the April 28, 2010 hearing or the July 7, 2010 Division Order. More importantly, the automatic stay provision does not prevent an administrative agency from taking necessary action pursuant to its regulatory authority. *Ohio State Bar Association v Dalton,* 124 Ohio 3d 154, 2010-Ohio-619.

**{¶17}** The trial court further held that the Division Order was supported by reliable, probative and substantial evidence.

**{¶18}** This case is before this Court on appeal from the March 12, 2012 decision of the Delaware County Court of Common Pleas that affirmed the Division's July 7, 2010 Order denying Diso's 2008 loan officer's renewal application upon a finding that his character and general fitness did not command the confidence of the public and did not warrant the belief that the business will be operated honestly and fairly in compliance with the purposes of R.C. 1322.01 through 1322.12.

### *Assignments of Error*

**{¶19}** Diso raises four assignments of error,

**{¶20}** "I. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE DIVISION'S ORDER AS THE STATE ADMINISTRATIVE PROCESS GIVING RISE TO THE ORDER VIOLATED THE AUTOMATIC STAY PROVISIONS OF THE FEDERAL BANKRUPTCY ACT CODIFIED AT 11 U.S. 362(A), WHICH BECAME A PERMANENT INJUNCTION VIA 11 U.S.C. 524(A).

**{¶21}** "II. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE DIVISION'S ORDER AS THE ORDER VIOLATES THE PROHIBITIONS SET FORTH IN THE FEDERAL BANKRUPTCY ACT AT II U.S.C. 525(A).

**{¶22}** "III. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER BECAUSE THE ORDER IS NOT BASED UPON RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AS REQUIRED BY OHIO REV. CODE 119.12.

**{¶23}** "IV. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER AS THE ORDER VIOLATES THE SUBSTANTIVE AND/OR PROCEDURAL RIGHTS OF THE APPELLANT UNDER THE OHIO AND/OR UNITED STATES CONSTITUTIONS."

***Standard of Review.***

**{¶24}** R.C. 119.12 permits loan officer licensees to appeal decisions of the Ohio Department of Commerce's Division of Financial Institutions to the common pleas court.

**{¶25}** In an administrative appeal, the court of common pleas reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12. The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303(1992) (footnotes omitted).

**{¶26}** R.C. 119.12 requires a court of common pleas to conduct both "a hybrid factual / legal inquiry and a purely legal inquiry." *Bartchy v. State Bd. of Edn.,* 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E. 2d 1096, ¶ 37. As to the first inquiry, the court "'must give deference to the agency's resolution of evidentiary conflicts,'" even though the agency's findings are not conclusive. *Id., quoting Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470–71, 1993-Ohio-182, 613 N.E.2d 591. In this regard, the Supreme Court has explained, as follows:

Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.

*Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111–12, 407 N.E.2d 1265(1980); *Bartchy* at ¶ 37. As to the second inquiry, the court must construe the law on its own. Id. at ¶ 38, 897 N.E. 2d 1096, citing *Ohio Historical Soc.* at 471, 613 N.E.2d 591.

**{¶27}** In a plurality opinion, the Ohio Supreme Court delineated the standard of review and the role of a court of appeals:

The court of appeals is even more limited in its review and can overturn findings of fact "'only if the trial court has abused its discretion.'" *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E. 2d 1240, *quoting Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264. A court of appeals has plenary review when deciding whether the decision is in accordance with the law. *Bartchy*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d **1065 1096, at ¶ 43. A majority

of justices in *Bartchy* reinforced this standard of deference. The plurality opinion stated that "the standards of review in the common pleas court and the court of appeals are meant to ensure proper deference to the state board," Id. at ¶95, while the concurring opinion found error because "the court of appeals substituted its judgment for that of the trial court on issues of fact." Id. at ¶98 (Lanzinger, J., concurring in syllabus and judgment only).

*Spitznagel v. State Bd. Of Edn.,* 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14. *Accord, Castle v. Ohio Dept. of Commerce*, 168 Ohio App.3d 74, 2006-Ohio-3702, 858 N.E.2d 843, ¶7 (5th Dist.); *Bennett v. St. Medical Bd. Of Ohio*, 10th Dist. 10AP-833, 2011-Ohio-3158, ¶12.

{¶28} The term "abuse of discretion" however has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. An excellent analysis of the misconception surrounding the concept of "abuse of discretion" was set forth by the Arizona Supreme Court sitting en banc:

The phrase "within the discretion of the trial court" is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations. *Walsh v. Centeio,* 692 F.2d 1239, 1242 (9th Cir.1982). Thus, the phrase "within the discretion of the trial court" does not mean

that the court is free to reach any conclusion it wishes. It does mean that where there are opposing equitable or factual considerations, we will not substitute our judgment for that of the trial court.

*State v. Chapple*, 135 Ariz. 281, 296-97, 660 P.2d 1208, 1223-24(1983).

**{¶29}** However, the Court further explained,

The term "abuse of discretion" is unfortunate. In ordinary language, "abuse" implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word "abuse" in the phrase "abuse of discretion" has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. *State ex rel. Fletcher v. District Court of Jefferson County,* 213 Iowa 822, 831, 238 N.W. 290, 294 (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence "is an abuse." *Kinnear v. Dennis,* 97 Okl. 206, 207, 223 P. 383, 384 (1924).

The law would be better served if we were to apply a different term, but since most appellate judges suffer from misocainea, we will no doubt continue to use the phrase "abuse of discretion." Therefore, we should

keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. *Walsh v. Centeio, supra.* Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to "look over the shoulder" of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge has "abused his discretion ..."

*State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 at n. 18; *State v. Garza*, 192 Ariz. 171, 175-76, 962 P.2d 898, 902(1998). *See, State v. Firouzmandi*, 5th Dist. No. 2006-CA-41, 2006-Ohio-5823, ¶¶ 54-55.

I.

**{¶30}** In his first assignment of error Diso contends that the Division's order violates the automatic bankruptcy stay provision set forth in 11 U.S.C. 362(a). Therefore, Diso continues, the trial court erred in affirming the order.

**{¶31}** In the case at bar, the trial court found,

> [Diso] asserts that the Division's order vacates the automatic stay provision set forth in 11 U.S.C. § 362 (a). This argument is without merit. [Diso's] bankruptcy was discharged on October 14, 2009 and therefore the stay was not in effect at the time of the April 28, 2010 hearing or the July 7, 2010 Division Order. More importantly, the automatic stay provision does not prevent an administrative agency from taking necessary action pursuant to its regulatory authority. *Ohio State Bar Association v Dalton,* 124 Ohio St.3d 154, 2010-Ohio-619, 924 N.E. 2d 821.

**{¶32}** The record in this case supports the trial court's findings. Diso notified the Division of his bankruptcy filing; the hearing officer continued the hearing set for June 30, 2009 and issued an order staying the proceedings. *Report & Recommendation* at 2. On October 14, 2009, the United States Bankruptcy Court, Southern District of Ohio discharged Diso from bankruptcy. (Respondent's Exhibit A; B) On March 10, 2010, the hearing officer issued an order reconvening the hearing on April 28, 2010, more than six months after Diso's bankruptcy discharge. (*Report & Recommendation* at 9; State's Exhibit 11).

**{¶33}** Even if the automatic stay were still in effect, the stay does not apply to this administrative action, which the Division brought pursuant to its regulatory authority. *Ohio State Bar Ass'n v. Dalton,* 124 Ohio St.3d 514, 2010-Ohio-619, 924 N.E.2d 821.

**{¶34}** We find Diso's attempt to distinguish *Dalton* unpersuasive. The Automatic Stay Provision is intended to "preserve what remains of the debtor's insolvent estate and ... provide for a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Chao v. BDK Indus., L.L.C.,* 296 B.R. 165, 167 (C.D.Ill. 2003) (citing *Holtkamp v. Littlefield,* 669 F.2d 505, 508 (7th Cir.1982)).

**{¶35}** In *Solis v. Caro,* N.D.Ill. No. 11 C 6884, 2012 WL 1230824(Apr. 12, 2012), the Court noted,

> Exceptions to the Automatic Stay Provision are listed in 11 U.S.C. § 362(b). One such exception, which the Secretary contends applies in this case, is "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power." 11 U.S.C. § 362(b)(4) (the "Government Proceeding Exception"). Courts narrowly construe this exception "to apply to the enforcement of ... laws affecting health, welfare, morals and safety." *Matter of Cash Currency Exch., Inc.,* 762 F.2d 542, 555 (7th Cir.1985) (citation omitted). In determining whether it applies, courts typically apply two tests: the "pecuniary purpose" test and the "public policy" test. *BDK*

*Indus.,* 296 B.R. at 167 (citing *Chao v. Hospital Staffing Servs., Inc.,* 270 F.3d 374, 384 (6th Cir.2001)).

Id. at *3.

**{¶36}** Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings that relate primarily to matters of public safety are exempted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate public policy are exempted from the stay. *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374, 385-386 (6th Cir.2001).

**{¶37}** In the case at bar, the Division has no pecuniary interest in Diso's property, and its action seeks only to effectuate public policy.

**{¶38}** Accordingly, the license disciplinary action commenced in this case is not subject to the automatic stay, and the Division Order does not violate Section 362(a). The Court below did not abuse its discretion.

**{¶39}** Diso's first assignment of error is overruled.

II.

**{¶40}** In his second assignment of error, Diso contends that 11 U.S.C. 525(a) prohibits a governmental agency from denying licensure solely because the applicant sought bankruptcy protection. Diso argues the Division predicated its action solely on his decision to file for Chapter 7 bankruptcy.

**{¶41}** Section 525(a) prohibits a governmental agency from denying licensure solely because the applicant sought bankruptcy protection,

> (a) * * * [A] governmental unit may not * * * refuse to renew a license * * * [of] a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act * * * solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, * * * or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

**{¶42}** The Division argues,

> The Division's concern in this case is not with the fact that Mr. Diso filed bankruptcy to avoid paying civil judgments, or even with the mere fact that Mr. Diso has unpaid judgments. *See* April 28, 2010 Transcript, pp. 22-23, 26-28. Mr. Diso never indicated that he lacked the financial means to pay the judgments. Rather, Mr. Diso's conduct with regard to his creditors and his stated basis for refusing to pay his debts were the ultimate factors in this case. Mr. Diso refused to pay the credit card companies because he disagreed with those companies on their legal right to raise his interest rates and fees: "Currently I am not making any payments and have no plans on making payments until I get answers on the law that allows credit card companies to raise rates." (Emphasis added.) CR, State's Exhibit 5.

Appellee' Brief at 14.

**{¶43}** The record reflects that Diso submitted letters of recommendation on his own behalf, as well as numerous letters to and from elected state officials. *See* T. April 28, 2010 at 29-33.

**{¶44}** The common pleas courts and the courts of appeals apply different standards of review for administrative appeals. As the court noted in *Henley v. Youngstown Bd. of Zoning Appeals,*

> This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. * * * It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

90 Ohio St.3d 142, 147, 735 N.E.2d 433, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267 (1988). Thus, unless this court determines that the trial court abused its discretion, we are compelled to affirm its decision as the court of appeals may not engage in what amounts to a substitution of judgment of the trial court. *Graziano v. Amherst Exempted Village Bd. of Edn.*, 32 Ohio St.3d 289, 294, 513 N.E.2d 282(1987). (Douglas, J., concurring).

**{¶45}** Regardless of the position that the Division now asserts, at the time the Division sent Diso the Notice of Intent letter and also at the time the Division presented its case-in-chief before the hearing officer, R.C. 1322.041(A)(6) and Ohio Adm.Code 1301:8-7-2(H) allowed the Division to consider the fact that Diso had unpaid civil judgments in determining his character and fitness to hold a loan officer license. What occurred next is what creates the conundrum in this case.

**{¶46}** After the Division informed Diso of its intent to deny the renewal of his license Diso sought the protection of the bankruptcy court and on October 14, 2009 Diso obtained a bankruptcy discharge, which included his unpaid civil judgments. Diso now contends that the Division cannot base a decision to deny his license upon the unpaid civil judgments.

**{¶47}** Section 525 is a codification of the doctrine articulated in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In essence, Section 525 provides that no governmental unit may deny or revoke a license solely because a person has not paid a debt that was discharged in bankruptcy. Conflicts with Section 525 have led some courts to either invalidate state statutes under the Supremacy Clause of the U.S. Constitution, or enjoin creditors from proceeding with collection efforts from third parties. *See, Matter of Layfield,* 12 B.R. 846 (Bankr.N.D.Ala.1981); *Green v. Yang,* 29 B.R. 682 (Bankr.S.D.Ohio 1983).

**{¶48}** The legislative history of the Bankruptcy Act indicates that Congress intended to bar a *per se* rule which would make filing in bankruptcy an automatic bar to a license or similar grant. Congress did not intend to preclude examination of the circumstances surrounding bankruptcy. See, H.R.Rep. No. 95-595, 95th Cong. 1st

Session at 164 (1977), reprinted in 5 U.S.Code Cong. & Admin.News, 95th Cong.2d Sess. 5787, 5963, 6126 (1978) providing in pertinent part:

> The prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability. The purpose of the section is to prevent automatic reaction against an individual for availing himself of the protection of the bankruptcy laws.... (I)n those cases where the causes of bankruptcy are intimately connected with the license, grant or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy.

*In the Matter of Anonymous,* 74 N.Y.2d 938, 939 550 N.Y.S.2d 270, 271, 549 N.E.2d 472, 473 (1989); *In re Stewart*, 2010 OK 61, 240 P.3d 666, 671(Watt, J. dissenting).

**{¶49}** In a case analogous to that at bar, the New York Court of Appeals considered a challenge brought by a bar applicant who was denied admission after the Character and Fitness Committee concluded that the applicant lacked "the character necessary to discipline himself to control his standard of living and the amount of his indebtedness, thus showing a lack of financial responsibility necessary for an attorney." *In the Matter of Anonymous,* supra. The applicant contended that the Character and Fitness Committee and the Appellate Division had denied his admission because of his

bankruptcy in violation of 11 U.S.C. 525. In analyzing the issue, the Court of Appeals wrote,

> The distinction is subtle because the State's actions may not inhibit individuals from taking advantage of the bankruptcy laws to avoid jeopardizing a future legal career. Nor can the State use its power to examine Bar applicants as a means of coercing them into reaffirming debts previously discharged (*see, Perez v. Campbell,* 402 U.S. 637, 649– 652, 91 S.Ct. 1704, 1711–1713, *supra;* Note, *Evaluation of a Bar Applicant's Moral Character: May a State Consider the Circumstances Surrounding a Discharge in Bankruptcy?,* 56 Ind.L.J. 703, 714). A determination of unfitness must rest not on the fact of bankruptcy but on conduct reasonably viewed as incompatible with a lawyer's duties and responsibilities as a member of the Bar. To successfully establish a claim that 11 U.S.C. § 525 has been violated, an applicant must establish that insolvency, the filing of bankruptcy or the discharge of debt is the *sole* reason for denial of the application (*see,* 11 U.S.C. § 525[a]; *In re Hopkins,* 66 B.R. 828 [Bank.Ct., W.D.Ark.]; *see also,* 11 U.S.C.S. § 525, History).

74 N.Y. 2d at 940, 550 N.Y.S. 2d at 271– 72, 549 N.E. 2d at 473-74. See also, *Matter of the Application of Taylor,* 293 Or. 285, 647 P.2d 462 (1982) [Bankruptcy Act did not prohibit examination of circumstances surrounding bankruptcy, as these circumstances illustrate judgment of the applicant for admission to bar in handling serious financial obligations.]; *In re Fasse,* 40 Bankr. 198(D. Col. 1984)[If factors other than the

nonpayment of the debt indicate the judgment debtor is unsuitable to hold a real estate license, the state may commence a proceeding to revoke debtor's license. *Hinders v. Miami Valley Regional Transit Authority,* 22 B.R. 810 (Bankr.S.D.Ohio 1982). However, if the only reason for suspension or revocation of the license is a debt discharged in bankruptcy, such action would be in direct contravention of § 525].

{¶50} Courts have also concluded that for police jobs consideration of the fact of prior bankruptcy was lawful. *See Marshall v. District of Columbia Government,* 559 F.2d 726, 729 (D.C.Cir.1977); *Detz v. Hoover,* 539 F.Supp. 532 (E.D.Pa. 1982); *In re Stewart,* 240 P.3d at 674 [*Perez* presents no bar to determinations that circumstances surrounding the filing of a bankruptcy petition may be considered in situations where the professional licensure of an individual may implicate the duty to manage money judiciously or where the filing may reflect character flaws of the applicant.]

{¶51} In other words, Diso cannot resort to bankruptcy as a short cut to obtaining a renewal of his license. More importantly, Diso cannot circumvent the consideration of his financial conduct, which the Division is required to investigate pursuant to R.C. 1322.041(A)(6) and Ohio Adm.Code 1301:8-7-2(H), by filing for bankruptcy.

{¶52} In the case at bar, the hearing officer considered, among other things, evidence of Diso's debts as submitted in his bankruptcy petition.(T., Apr. 28, 2010 at 5-7; Respondent's Exhibit B; *Report and Recommendation* at 6). The hearing officer further considered letters of recommendation submitted on Diso's behalf. (*Report and Recommendation* at 5; 6).

{¶53} The record reflects that the Division presented evidence that it did not discriminate against Diso because he had unpaid debts or because he filed for bankruptcy. Further, while there is evidence that the Division would consider, along with all other evidence, if Diso paid his civil judgments, there is no evidence in the record that the Division ever conditioned licensure on Diso's paying his discharged civil judgments. The record reflects that the Division often approves loan officer applicants who have unpaid debts and applicants who previously filed for bankruptcy. The testimony at Diso's hearing illustrated that as many as sixty percent of the individuals who apply for the license Diso seeks are bankruptcy filers, and many of those individuals obtain licenses from the Division. See, T. April 28, 2010 at 28-29.

{¶54} In the case at bar, the Division did not condition the denial of Diso's application to renew his license on his failure to repay the discharged debts or on the fact that he had filed for bankruptcy. The denial of his application to renew did not occur automatically when the default judgments or the bankruptcy discharge were entered. Rather, Diso was afforded a due process hearing in which he was represented by counsel and had the opportunity to present evidence before his application was denied. We also note that the statute does not preclude Diso from reapplying for a loan officer license. (T., Dec. 1, 2010 at 23; 28; 38). At no time did the Division seek to compel repayment of the discharged judgments as a condition to granting the license.

{¶55} The decision in Diso's case was not based upon the fact that Diso filed bankruptcy; rather the decision rests upon  conduct reasonably viewed as incompatible to a loan officer's duties. In deciding whether to issue a loan officer license the Division

may properly consider, as a factor, the fact that the applicant has been unable to manage his financial affairs.

**{¶56}** Therefore, the Division's order denying Diso's license renewal application does not violate the prohibiting contained in 11 U.S.C. 525(a).

**{¶57}** Diso's second assignment of error is overruled in its entirety.

III.

**{¶58}** In his third assignment of error, Diso maintains that the trial court's decision in affirming the Division's order denying Diso's license renewal application is in error because the order is not base upon reliable, probative and substantial evidence.

**{¶59}** The Supreme Court of Ohio has delineated the standard of review and the role of a court of appeals in an administrative appeal,

> If the judgment of the court of common pleas is then appealed to the court of appeals, review in the appellate court is strictly limited to a determination of whether the common pleas court abused its discretion. This scope of review is, of course, extremely narrow. The term 'abuse of discretion' has been defined as implying "'not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'"

(Citations omitted.)

*Graziano v. Amherst Exempted Village Bd. of Edn.*, 32 Ohio St.3d 289, 295, 513 N.E.2d 282(1987). (Douglas, J., concurring).

**{¶60}** In the case at bar, the trial court issued a five page Judgment Entry that includes a thorough discussion of the testimony and evidence presented to the hearing officer. The record before the hearing officer contained three pages that Diso presented

from his bankruptcy petition Schedule F that indicated that Diso accumulated over $100,000.00 in debts. (T., Apr. 28, 2010 at 5-7; Respondent's Exhibit B; *Report and Recommendation* at 6). The hearing officer further considered letters of recommendation submitted on Diso's behalf. (*Report and Recommendation* at 5; 6).

**{¶61}** Diso argues in this appeal that because his debts were the result of poor economic conditions, the civil judgments against him do not constitute reliable, probative, or substantive evidence.

**{¶62}** R.C. 1322.041(A)(6) and Ohio Adm.Code 1301:8-7-2(H) allowed the Division to consider the fact that Diso had unpaid civil judgments in determining his character and fitness to hold a loan officer license. Further, the hearing officer did consider Diso's letters setting forth his economic hardship.

**{¶63}** "'The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.'" *Rossford Exempted Village School Dist.,* 63 Ohio St.3d at 707, 590 N.E.2d 1240, quoting *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264.

**{¶64}** In the matter *sub judice,* we do not perceive an "unreasonable, arbitrary or unconscionable attitude or one that is "not merely error of judgment, but [one of] perversity of will, passion, prejudice, partiality, or moral delinquency. Diso's arguments go to the weight of the evidence, rather than demonstrating an "abuse of discretion."

**{¶65}** Diso next contends that the hearing officer did not consider his letters of recommendation. We reject this argument. The hearing officer did consider letters of recommendation submitted on Diso's behalf. (*Report and Recommendation* at 5; 6).

**{¶66}** Diso next reiterates the argument that we rejected in our discussion of his second assignment of error, to wit, 11 U.S.C. 525(a) prohibits a governmental agency from denying licensure solely because the applicant obtained a discharge in bankruptcy of the underlying civil judgments. However, as we have previously found that in deciding whether to issue a loan officer license the Division may properly consider, as a factor, the fact that the applicant has been unable to manage his financial affairs.

**{¶67}** Upon review, we conclude that the trial court did not abuse its discretion in concluding that reliable, probative, and substantial evidence supported the Division's determination.

**{¶68}** Diso's third assignment of error is overruled in its entirety.

IV.

**{¶69}** In his fourth assignment of error, Diso contends that the Division violated his due process rights by not proving proper notice of the charges against him.

**{¶70}** R.C. 119.07 states in pertinent part, "[n]otice shall be given by registered mail, return receipt requested, and shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice." Under R.C. 119.07, the administrative agency is required to give Appellants notice of the charges or other reasons for the proposed action. "The purpose of such notice is to give the party charged with a violation adequate notice to enable the

party to prepare a defense to the charges." *Sohi v. Ohio State Dental Board*, 10th Dist. No. 96APD05-687, 1997 WL 275495(May 20, 1997), citing *Geroc v. Ohio Veterinary Medical Bd.*, 37 Ohio App.3d 192, 199, 525 N.E.2d 501(1987), quoting *Keaton v. State*, 2 Ohio App.3d 480, 483, 442 N.E.2d 1315(1981). "In addition, the due process clause of the Fourteenth Amendment to the United States Constitution, to some extent, is applicable to hearings before administrative agencies, and such procedural due process includes reasonable notice of the subject matter of the hearing. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 102 Ohio App.3d 100, 103-104, 656 N.E.2d 1016(1995) (citations omitted). Hence, if relator was not given proper notice as required under R.C. 119.07 and as dictated under procedural due process principles, the [trial court] may reverse the board's order." Id.

{¶71} Diso argues that the Division improperly amended the Notice of Intent sent to him on January 1, 2009. (State's Exhibit 1). Diso contends that he was not informed that his conduct in refusing to pay the civil judgments would be considered in deciding whether to approve his application for a renewal of his loan officer license.

{¶72} The Notice of Intent clearly provides that the three default judgments were considered as the basis for denying his renewal. However, the notice further provided,

> G. In March 2008, Respondent submitted to the Division a Notification of Judgment form, supporting documentation and a statement informing the Division of his refusal to pay the civil judgments entered against him.

H. In November 2008, Respondent informed the Division that he had not paid and reiterated his refusal to pay the civil judgments entered against him.

State's Exhibit 1. That Diso's conduct as expressed in paragraphs G and H were considered as a basis for denying the renewal of his license was addressed before the hearing officer during the April 21, 2009 hearing. (T. Apr. 21, 2009 at 22-25). If Diso did not realize that his conduct was going to be an issue, this discussion obviates that concern. After the Division presented its case-in-chief on April 21, 2009, the hearing was adjourned and would not recommence until after Diso's discharge in bankruptcy. The hearing recommenced on April 28, 2010 over one year from when the Division presented its case-in-chief. If Diso was unaware that the Division was considering his conduct in deciding whether to renew his license, he was certainly aware of it before the April 28, 2010 hearing.

{¶73} Given the record, we find that Diso has failed to demonstrate that he was prejudiced. He had over one year after the Division presented its case-in-chief in which to prepare his defense.

{¶74} Diso next argues that the Division has punished him for exercising his right to free speech.

{¶75} Diso was given notice and an opportunity to be heard before his application was denied. On May 14, 2010, the hearing officer issued a Report and Recommendation concluding,

[Diso] accumulated over $100,000.00 in debt, which (was discharged in bankruptcy) demonstrates [Diso's] lack of financial

responsibility to command the confidence of the public to warrant the belief that his business would be conducted honestly and fairly in compliance with the purposes of the Ohio Mortgage Broker Act. R.C. 1322.041(A)(10).

**{¶76}** The report concluded that the Division had met its burden of proof, and recommended that the Division deny Diso's 2008 loan officer license renewal application. Diso filed objections, again referencing the bankruptcy and arguing the effect of the automatic stay. Both the Report and Recommendation and the Division's Final Order base the decision to deny Diso's 2008 loan officer's renewal application upon the fact that Diso has been unable to manage his financial affairs.

**{¶77}** Accordingly, there is no evidence in the record that the decision to deny Diso's 2008 loan officer's renewal application was in response to his exercise of constitutionally protected First Amendment freedoms.

**{¶78}** Diso's fourth assignment of error is overruled in its entirety.

***Conclusion***

**{¶79}** Having overruled each of Diso's assignments of error and having concluded that the trial court did not abuse its discretion in affirming the Division's order, we affirm the judgment of the Delaware County Court of Common Pleas.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER

WSG:clw 0914

[Cite as *Diso v. Dept. of Commerce*, 2012-Ohio-4672.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RICHARD B. DISO | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DEPARTMENT OF COMMERCE | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 2012-CA-25 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER